472 P.2d 973

Ernest A. TAFOYA, Relator-Appellant,

v.

The NEW MEXICO STATE POLICE BOARD and Edward J. Apodaca, Edwin L. Mechem, I. D. Worrell, Pilar Sachs and John J. Coury, and Colonel Joseph A. Black, Chief of New Mexico State Police Department, and Edward M. Hartman, Director of the Department of Finance & Administration, Respondents-Appellees.

No. 8959.

Supreme Court of New Mexico.

Aug. 3, 1970.

Standley, Witt & Quinn, Santa Fe, for relator-appellant.

James A. Maloney, Atty. Gen., Joyce Blalock, Sp. Asst. Atty. Gen., Santa Fe, for respondents-appellees.

## OPINION

McKENNA, Justice.

The appellant Ernest A. Tafoya became a patrolman for the New Mexico State Police on August 11, 1941. With the exception of some military leave, he served continuously with the State Police until he was terminated on June 30, 1968. At that time he was a Captain.

On May 14, 1968, the Chief of the State Police sent him a letter advising that the State Police Board had directed that "you be retired from the New Mexico State Police Department at the close of business, June 30, 1968, due to a physical disability." The letter refers to retirement, but what was actually accomplished was a termination of his services. In any event, the distinction between those terms is not determinative here. It is quite clear that the physical disability was viewed by the Board as rendering the Captain incapable of performing his duties. The record is also quite clear that there was no other complaint against the Captain.

In September, 1968, the Captain petitioned the District Court of Santa Fe County for a writ of mandamus directing the appellees to restore him to his position, to refrain from terminating him except as provided by § 39-2-11, N.M.S.A.1953, and to pay him all salary due from July 1, 1968, forward, as well as to restore all annual and like leaves and benefits. An alternative writ was issued.

The hearing on the alternative writ revealed the following sequence. On March 7, 1968, the State Police Board directed the Captain to take a physical examination at

a clinic in Albuquerque. There was an established policy for periodic physical examination of all officers over a certain age to determine physical fitness to perform exacting physical duties. The Captain was not singled out, for other officers were required to submit to physical examination at the same clinic.

The Captain was given the physical examination and the results were communicated to an intermediate Medical Review Panel of the State Police Department, composed of three experienced fellow officers. The duty of this panel was to review the medical report and to make a recommendation to the State Police Board as to physical fitness. The doctor's report showed that the Captain had sustained a myocardial infarction and suffered from arteriosclerosis of the aorta. The panel recommended to the Board that the Captain be retired for medical disability. The Board met on May 10, 1968, concluded that Captain Tafoya should be retired because of physical disability, and the letter of May 10, 1968, followed. At the court hearing, Captain Tafoya testified that he had commenced work with an engineering firm on August 20, 1968 but at a salary less than he had been earning as a Police Captain.

The district court found that the Captain had been "retired" by the Board because of physical disability; that no notice was given to the Captain of the Board meeting on May 10, 1968, and no hearing was ever afforded him. It concluded that § 39–2–6(A) (5), N.M.S.A.1953 (1969 Supp.) authorized the Board to require State Police officers, excepting the Chief, to take physical examinations, and to determine if members successfully pass such examinations and, in the Board's discretion, to retire those members who do not pass. The court specifically decided that § 39–2–11, supra, was not applicable in this situation. The alternative writ was then quashed.

The position of the Captain is that no notice or hearing was ever afforded him prior to his termination. He says these are required by § 39–2–11, supra, which governs the removal, suspension and demotion of officers. Consequently, he argues, his termination was contrary to law and violative of due process. The respondents' answer is that no hearing was necessary. It was simply that the Captain failed to pass a required physical examination as provided for by § 39–2–6(A) (5), supra, and that the Board in such circumstance had discretion to terminate as it did.

Section 39–2–11, supra, provides:

"No member of the state police holding a permanent commission, other than the chief, shall be removed from office, demoted, or suspended except for *incompetence,* neglect of duty, violation of a published rule of conduct, malfeasance in office, or conduct unbecoming an officer, and only on specific written charges filed with the police board with timely and adequate notice thereof to the person charged, and after a hearing on such charges by said board. The person so charged shall have the right to be represented by counsel at such hearings. A complete record of the hearing shall be made and, upon request, a copy thereof shall be furnished to the person charged. Such person may require that such hearing be public. In the event the board shall determine that the person charged shall be removed, demoted, or suspended for a period in excess of thirty [30] days, such person may appeal from the decision of the board to the district court of the district wherein the alleged cause or any one of the alleged causes for the proceeding arose. Such appeal shall be filed within twenty (20) days after the decision of the board shall have been rendered and the court shall determine whether there is substantial evidence to support the board's action and dispose of the appeal accordingly. Such determination shall be made on the basis of the record except that, for cause shown, the court shall permit either the board or the person charged to introduce new evidence. Pro-

vided, however, that the chief of the state police is hereby authorized to suspend members of the department for disciplinary reasons for periods of not to exceed thirty (30) days. Any member of the state police holding a permanent commission thus suspended by the chief of the state police shall have the right to have such suspension reviewed by the state police board, but no further review or appeal shall be allowed." (Emphasis ours.)

Section 39–2–6(A), supra, states:

"*Members* of the New Mexico state police, except the chief, shall:

"(1) at the time of their appointment, be citizens of the United States;

"(2) at the time of their appointment, be at least twenty-one [21] years of age and not more than thirty-five [35] years of age;

"(3) have at least a high school education or its equivalent;

"(4) be of good moral character and not have been convicted of a felony or any infamous crime in the courts of this state or any other state or country or in the federal courts; and

"(5) *successfully pass any physical examination the police board may require.*" (Emphasis ours.)

Noticeably, this section contains no procedure for terminating an officer if he should fail to pass a required physical examination.

The statutes governing the State Police Department reflect an obvious, well-knit effort to establish a comprehensive plan of administration. In part, they provide that the department shall be "managed and controlled by the New Mexico state police board" (§ 39–2–2, N.M.S.A.1953); that after a probationary period, appointees are to receive a "permanent commission" with salaries to be fixed by the board (§ 39–2–9, N.M.S.A.1953); that all officers shall hold their offices during "good behavior" subject to removal as therein provided (§ 39–2–4, N.M.S.A.1953). Furthermore, in Winston v. New Mexico State Police Board, 80 N.M. 310, 454 P.2d 967 (1969), our Court, in striking down a retirement rule as contrary to statutory authority, found that the statutory provisions did afford some tenure to the officers, and that officers were to be removed for cause only pursuant to § 39–2–11, supra.

Bearing in mind that a comprehensive statutory plan was intended, must the statutory requisites of adequate, timely notice and opportunity to be heard, provided for by § 39–2–11 be complied with before an officer may be terminated for physical unfitness?

Obviously, "incompetence" is the only statutory charge that has any reasonable relationship to physical disability. But if we look at its companions, "neglect of duty," "violation of a published rule of conduct," "malfeasance in office," "conduct unbecoming an officer," there is in them an element of dereliction of duty or personal misconduct. Also, the section requires the filing of "charges" which might imply illegal activity as stated in Mason v. Seaton, 303 Ky. 528, 198 S.W.2d 205, 207 (1946). Again, the words "removed from office" may imply personal dereliction of duty. Board of Education v. Stotlar, 95 Ill.App. 250 (1901). On the other hand, "removal" is really the act which terminates incumbency or employment, State ex rel. Wendling v. Board of Police & Fire Com'rs, 159 Wis. 295, 150 N.W. 493, 494 (1915), and "charge" or "charges" are later referred to in our statute as "cause," or "causes," broader terms not necessarily implying dereliction or misconduct.

Furthermore, techniques in aid of construction of a statute are used to resolve an ambiguity, not to create one. We find no reason to think "incompetence" is uncertain or ambiguous. Nor, so unsure that it cannot stand by itself, unaided by its statutory companions. It is generic, County Board of Education of Clarke County v. Oliver, 270 Ala. 107, 116 So.2d 566 (1959), but that does not equate ambiguity.

In State ex rel. Attorney General, Brickell v. Martin, 180 Ala. 458, 61 So. 491, 494 (1913), the Supreme Court of Alabama said:

"'Incompetency,' in this relation, was considered by this court in State ex rel. v. Lowe (in manuscript), Justice Sharpe writing the opinion. It was delivered February 5, 1903. It was then pertinently said: 'Incompetency is by the Constitution and statutes of this state mentioned as a distinct ground for impeachment of public officers, including solicitors, and therein the term stands without qualification, except such as may be implied from the connection in which it is used and the apparent object of its use. *It is safe to assume that neither of the other grounds of impeachment is intended to cover or to be necessarily coupled with this one, and therefore it may be further assumed that the disqualification at which it is aimed may exist independent of any willful neglect of duty, corruption in office, intemperance, or criminality. The exclusion of those other grounds leaves the term "incompetency" little, if anything, to stand for other than mere incapacity for the performance of duties devolved by law on the official in respect of the particular office he fills.* Such capacity on the part of the official is deemed essential to the accomplishment of the legislative purpose which was to supply a remedy for the inefficient administration of office. *It is possible that incompetency of an official may exist by reason of either physical or mental conditions, and that it may bring detriment to the public whenever from any cause it may occur.* * * *'" (Emphasis ours.)

Somewhat surprisingly, the word has already been before us in a dispute quite similar, involving the revocation of a professional license. In Hatfield v. New Mexico State Board of Registration, 60 N.M. 242, 290 P.2d 1077 (1955), the Court resorted to Webster to arrive at its generally understood meaning. We do likewise. Among the definitions of "in-

competence" in Webster's Third New International Dictionary is:

"The state or fact of being incompetent: as *a*: lack of physical, intellectual or moral ability."

Many cases have determined that "incompetence" embraces physical inability to perform. State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A.L.R. 988 (1934); County Board of Education of Clarke County v. Oliver, supra; Collins v. Iowa Liquor Control Commission, 252 Iowa 1359, 110 N.W.2d 548, 550 (1951); State ex rel. DeBellevue v. Ledoux, 3 So.2d 188, 190 (La.App.1941); Board of Public Education School District of Philadelphia v. Beilan, 386 Pa. 82, 125 A.2d 327, 328 (1956), aff'd 357 U.S. 399 (1958). 67 C.J.S. Officers § 60, at 253, states that incompetency "refers to any physical, moral, or intellectual quality, the lack of which incapacitates the officer to perform his duties."

There being no clearly expressed legislative intent requiring otherwise, the word is to be given its usual, ordinary meaning. Winston v. New Mexico State Police Board, supra. It includes physical inability to perform, which inclusion, we believe, fits in with the pattern and purpose of the statutory plan. A termination or removal for physical unfitness is no less final than one for another form of incompetence.

Furthermore, the conclusion that we have reached is consonant with due process, for any doubt as to the right to procedural safeguards should be resolved in the officer's favor unless the right to remove at will or pleasure is clearly expressed. State ex rel. Williamson v. Wannamaker, 213 S.C. 1, 48 S.E.2d 601, 607 (1948).

While we have used many words to arrive at the meaning of one, we do so because we should not for meager reasons interfere with the State Police Board's authority to manage and control the department, § 39–2–2, supra. But no rule or regulation of the Board or long-standing prac-

tice has been presented showing an interpretation contrary to the one which we have reached, assuming arguendo that a narrower administrative interpretation of "incompetence" would be legally permissible.

■ Accordingly, it follows that the Board was required to meet the statutory procedures of § 39–2–11, supra, when it desired to terminate Captain Tafoya. This was not done and consequently the severance from service was short of statutory right. The Captain must be restored to his office, effective as of July 1, 1968, and the Board must proceed anew, meeting all the steps of § 39–2–11, supra, if it desires to terminate or remove the Captain from service.

■ The appellees thought that the Board charged with management and control of the department had the discretion to terminate the Captain for failure to pass the required physical examination. However, such authority must yield to specific statutory requirements. We do agree with the Board that § 39–2–6(A) (5), supra, requiring *members* to successfully pass any required physical examination, is not limited to prospective members of the State Police. We think this to be a continuing qualification, that is, members must pass any reasonable physical examination required from time to time by the Board. If otherwise, it would hamstring the department in its public functions. Additionally, we note that the following section, § 39–2–7, N.M.S.A.1953, refers to applicants for appointment and this section specifically requires that such applicants submit to physical examination. If the appellant be correct that § 39–2–6(A) (5), supra, applies only to prospective members, the net effect of his argument is that the legislature engaged in the useless task of covering the same subject matter twice.

■ While the Board may require its officers to submit to and pass any physical examination reasonably required and while the failure to pass may be the basis for a removal proceeding, this is far different

from vaulting § 39–2–6(A) (5) to a power of dismissal at the discretion of the Board without prior notice and a hearing.

As to the remaining relief requested by the petitioner, that he have his salary from July 8, 1968, forward, plus the other benefits which attach to his office, heretofore enumerated, we question that such relief automatically and clearly follows, and that it is properly before us at this stage, in these mandamus proceedings. Implicit in such request is that the Board must pay the salary and accord the other benefits pending the conclusion of any administrative proceedings under the statute.

First of all, there is no specific statutory authority for such relief. Secondly, what of the doctrine of mitigation and is it applicable to such a claim? We do not know what Tafoya has earned or could have earned from outside employment since July 8, 1968. See Mastrobattista v. Essex County Park Com'n, 46 N.J. 138, 215 A.2d 345 (1967) and the authorities referred to therein, which discuss an officer's right to back pay when illegally dismissed and New Jersey's interpretation of common law principles which purport to hold that an "officer" cannot be paid for services not in fact rendered, regardless of the reason.

It is the State Police Board, not us, which is charged by statute with the control and management of the department, and the Board, not us, fixes salaries for services performed. It would be improper, and premature, as we see it, for us to rule before it decides. We must first let the Board act in its statutory area, sifting the relevant considerations. If, in weighing all the considerations and pertinent facts, the Board should reach a decision which Captain Tafoya believes is erroneous, he has then an adequate remedy.

■ In short, as to the claimed salary and other benefits, the Captain must now first pursue them administratively. That part of the dispute is not now ripe for our consideration. By so holding we see no irreparable harm to Tafoya. Thomas v.

**716**

Ramberg, 240 Minn. 1, 60 N.W.2d 18 (1953).

We reverse, and the district court is ordered to issue a permanent writ of mandamus directed to respondents, the New Mexico State Police Board and its members, requiring and commanding that the relator shall be restored to his position as a Captain of the New Mexico State Police as of July 1, 1968. The Director of the Department of Finance and Administration was named as a respondent but the writ is not to name him. The remaining relief requested is denied.

It is so ordered.

COMPTON, C. J., and SISK, J., concur.