Robert W. MYERS, et al., Respondents,

v.

CITY OF OAKDALE,
Petitioner, Appellant.

No. C0–86–1002.

Supreme Court of Minnesota.

July 31, 1987.

Judith Bevis Langevin, Anne M. Radolinski, Minneapolis, for appellant.

Jeffrey W. Jacobs, St. Paul, for respondents.

## OPINION

WAHL, Justice.

We are called upon in this case to answer two questions involving the Veterans Preference Act, Minn.Stat. § 197.46 (1986). First, whether an employee-veteran who has been placed on indefinite medical leave of absence has been removed, as that word is used in the Act, from his or her position or employment. Second, whether an employee-veteran who may be physically unable to perform the job is entitled to a veterans preference hearing prior to being removed from the position or employment. The court of appeals held that because the effect of appellant City of Oakdale's placement of respondent Robert Myers on indefinite medical leave was to remove Myers from his job as an Oakdale police officer, Myers was entitled to a hearing pursuant to section 197.46. *Myers v. City of Oakdale*, 397 N.W.2d 424, 426 (Minn.App.1986). For the reasons set forth herein, we affirm.

On November 21, 1983, while in the course of his employment as an Oakdale police officer, Robert Myers suffered a lower back injury. Since his injury, Myers has not returned to work as a police officer.

On January 16, 1985, Myers' treating physician, Dr. Jonathan Biebl, signed a work and activity release indicating that Myers could return to his job and apparently placing no restrictions on his activity. Upon receipt of Dr. Biebl's release, Oakdale required Myers to see another physician, Dr. Alex Webb. In June 1985, prior to the submission of Dr. Webb's diagnosis,

Dr. Biebl amended his release by imposing certain restrictions on Myers' activity: "no repetitive bending, lifting and twisting and stooping and change of position every three hours." Dr. Biebl, while rating Myers as having a 7½% permanent partial disability, did not change his opinion that Myers was able to return to his regular job.

In late July 1986, Dr. Webb sent a letter to Oakdale regarding his diagnosis of Myers. Dr. Webb concurred with the restrictions placed on Myers' activity by Dr. Biebl, and added the restriction that Myers not be required to lift more than 25 pounds. Dr. Webb, however, disagreed with Dr. Biebl's conclusion that Myers could return to work. He concluded his report: "In my opinion Mr. Myers has a permanent impairment of his low back, which with reasonable medical certain[t]y will not improve to a significant degree. Thus, I recommend that Mr. Myers be put on medical retirement."

On January 1, 1986, Oakdale placed Myers on medical leave of absence from his job, and on March 5, 1986, Oakdale informed Myers, by letter, that he had been placed on indefinite medical leave of absence. Oakdale's letter also informed Myers that "[i]f at some future time you are considered able by medical doctors to be able to perform all of the duties and responsibilities of the Oakdale Police Officer job classification you will be placed on active status."

On March 7, 1986, Myers filed in the district court a petition for writ of mandamus asking for an order compelling Oakdale to comply with the Veterans Preference Act by affording him a veterans preference hearing and by paying him all continuing and accrued salary until such time as the hearing board ruled on the issue of his competency for the job. On May 14, 1986, the district court filed an order granting the writ. The court of appeals affirmed the district court, holding that because Myers' medical condition was permanent, "Oakdale has effectively discharged Myers from his position as a police officer for the City of Oakdale." *Myers v. City of Oakdale*, 397 N.W.2d 424, 426 (Minn.App. 1986). We granted Oakdale's petition for review for the purpose of answering the

narrow question of whether Myers had been removed from his job, and the broad question of whether a public employer must comply with the Veterans Preference Act when the reason for removing the employee-veteran is that he or she is physically unable to perform the job.

## I

The Veterans Preference Act provides, in pertinent part, that

> No person holding a position by appointment or employment in the several counties, cities, towns, school districts and all other political subdivisions in the state, who is a veteran separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Minn.Stat. § 197.46 (1986). We have repeatedly held that the effect of the Veterans Preference Act is to limit the grounds upon which a public employer can remove a veteran from his or her job to "incompetency" or "misconduct." *See Young v. City of Duluth*, 386 N.W.2d 732, 737–38 (Minn. 1986). However, we have also determined that the Veterans Preference Act is

> not intended to take away the power given [municipal] officials over the administrative and business affairs of the municipality, and [does] not prevent [municipal officials] from terminating the employment of an appointee by abolishing the office or position which he held, if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position.

*State ex rel. Boyd v. Matson*, 155 Minn. 137, 141, 193 N.W. 30, 32 (1923) (citations omitted). Accordingly, "public employers have only three grounds on which to base a termination of a veteran. The Act allows a termination for 'incompetency' or 'misconduct' and *Boyd* permits a public employer to, in good faith, abolish a position held by a veteran." *Young*, 386 N.W.2d at 738.

## II

■ The first question we address is whether Oakdale, by placing Myers on indefinite medical leave, has removed him from his job. Oakdale contends that since the opportunity exists for Myers to return to his job, he has not been removed. We think that Oakdale's argument imports too rigid a meaning to "removed," emphasizing form at the expense of substance.

While we have not defined what it means to be "removed from such position or employment," we have recognized that a veteran is entitled to a hearing not only before he or she is discharged, but also before being demoted. *See Leininger v. City of Bloomington*, 299 N.W.2d 723, 726 (Minn. 1980). A veteran is not, however, entitled to a hearing prior to being suspended; a suspension does not constitute a removal. *See Wilson v. City of Minneapolis*, 283 Minn. 348, 352, 354, 168 N.W.2d 19, 22–23 (1969).

In *Wilson* we cited the case of *Mayor of Newton v. Civil Service Comm'n*, 333 Mass. 340, 130 N.E.2d 690 (1955), wherein the Massachusetts Supreme Court stated: "'The distinction between suspension and dismissal thus is one of substance and not of form. Suspension imports the possibility or likelihood of return to the work when the reason for the suspension ceases to be operative. Dismissal imports an ending of the employment.'" *Mayor of Newton*, 333 Mass. at 344, 130 N.E.2d at 692, *quoting Commissioner of Labor & Industries v. Downey*, 290 Mass. 432, 434, 195 N.E. 742, 743 (1935).

This is not a suspension versus removal case. Nevertheless, *Wilson* and the cases cited therein are helpful in determining the meaning of the phrase "removed from such position or employment." We agree with the premise of *Mayor of Newton* that whether an employer has by its action removed a veteran is a matter of substance and not of form. We hold that under the Veterans Preference Act, a veteran is removed from his or her position or employment when the effect of the employer's action is to make it unlikely or improbable

that the veteran will be able to return to the job.

Applying this holding to the case before us, the question is whether Oakdale's act of placing Myers on indefinite medical leave until doctors consider him capable to perform all of the duties and responsibilities of the Oakdale Police Officer job classification makes it unlikely or improbable that Myers will be able to return to his job. Both the district court and the court of appeals held that Oakdale's act effectively removed Myers from his job. We agree.

Documentary evidence submitted to the district court shows the following: (1) that Myers suffered a work-related lower back injury resulting in a 7½% permanent partial disability, and that it is unlikely his condition will improve to a significant degree; (2) that both doctors who have examined Myers have, because of Myers' back injury, placed restrictions on his activity; (3) that Oakdale's decision to place Myers on indefinite medical leave of absence is based on the medical reports of those doctors; and (4) that Oakdale will not permit Myers to return to his duties until such time as he is considered able by medical doctors to perform all of the duties and responsibilities of the Oakdale Police Officer job classification. On these facts the effect of Oakdale's action is to make it unlikely that Myers will be able to return to his job. We hold, accordingly, that Myers has been removed from his job.

## III

■ Because Myers has been removed from his job, he is entitled to a veterans preference hearing unless, as Oakdale contends, the city need not comply with the Veterans Preference Act when the reason for removing the veteran is that he or she is physically unable to perform the job.[1]

As previously noted, a public employer has only three grounds on which to remove a veteran from his or her job: incompetency, misconduct, or good faith abolishment of the position. When the reason for re-

moval is incompetency or misconduct, the veteran is entitled to a hearing before a Veterans Preference Hearing Board. When the reason for removal is the abolishment of the position, the veteran is not entitled to a veterans preference hearing but to a hearing before the district court where the court determines whether the employer's action was taken in good faith. *See Young v. City of Duluth*, 386 N.W.2d 732, 739 (Minn.1986).

Oakdale argues that like the decision to abolish a position, the decision to remove a veteran because of his or her physical limitations is an administrative-business decision governed by the good faith standard, and a district court, not a veterans preference hearing board, is the proper body to determine whether the employer acted in good faith. Oakdale contends that when a veteran is removed for physical inability to perform the job, the veteran is not being removed for "incompetency," which refers to poor or inadequate performance or nonperformance, or for "misconduct," which refers to improper conduct.

Myers argues that when a veteran is removed for physical inability to perform the job, the veteran is being removed for "incompetency" and is thus entitled to a veterans preference hearing.

Clearly one's physical inability to perform the job does not constitute "misconduct." The question we must answer is whether physical inability to perform the job constitutes "incompetency," as that word is used in the Veterans Preference Act.

A canon of construction is that "[w]ords and phrases are construed * * * according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning * * are construed according to such special meaning * * *." Minn.Stat. § 645.08(1) (1986). While it is the Minnesota statute which is being construed, we think it helpful to consider how the courts of other

1. Myers has maintained throughout these proceedings that in spite of his injury, he is able to return to his job.

states have construed "incompetency" in similar circumstances.

A New Mexico statute provides, in pertinent part, that:

No member of the New Mexico state police holding a permanent commission shall be removed from office, demoted or suspended except for *incompetence,* neglect of duty, violation of a published rule of conduct, malfeasance in office or conduct unbecoming an officer, and only on specific written charges filed with the New Mexico state police board with timely and adequate notice thereof to the persons charged, and after a hearing on such charges by the board.

N.M.Stat.Ann. § 29–2–11 (1984) (emphasis added). In *Tafoya v. New Mexico State Police Bd.,* 81 N.M. 710, 472 P.2d 973 (1970), the New Mexico Supreme Court addressed the issue of whether the notice and hearing requirements of section 29–2–11, then numbered section 39–2–11, must be satisfied "before an officer may be terminated for physical unfitness." 81 N.M. at 713, 472 P.2d at 976. Recognizing that of the grounds for discharge provided by the statute, only "incompetence" bears a reasonable relationship to physical disability, the court ruled:

Among the definitions of "incompetence" in Webster's Third New International Dictionary is: "The state or fact of being incompetent: as *a:* lack of physical, intellectual or moral ability."

Many cases have determined that "incompetence" embraces physical inability to perform. 67 C.J.S. Officers § 60, at 253, states that incompetency "refers to any physical, moral, or intellectual quality, the lack of which incapacitates the officer to perform his duties."

There being no clearly expressed legislative intent requiring otherwise, the word is to be given its usual, ordinary meaning. [Incompetence] includes physical inability to perform * * *. A termination or removal for physical unfitness is no less final than one for another form of incompetence.

*Id.* at 714, 472 P.2d at 977 (citations omitted).

The Pennsylvania Supreme Court took a similar approach when it interpreted "incompetency" as used in Pennsylvania's teachers tenure act.

The term "incompetency" has a "common and approved usage". The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C.J., with reference to a number of supporting decisions, it is defined: "A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty." In Black's Law Dictionary (3rd edition) page 945, and in Bouvier's Law Dictionary, (3rd revision) p. 1528, it is defined as "Lack of ability or fitness to discharge the required duty." Cases construing the word to the same effect are found in Words and Phrases, 1st series, page 3510, and 2nd series, page 1013. Webster's New International Dictionary defines it as "want of physical, intellectual, or moral ability; insufficiency; inadequacy; specif., want of legal qualifications or fitness." Funk & Wagnalls Standard Dictionary defines it as "General lack of capacity of fitness, or lack of the special qualities required for a particular purpose."

*Horosko v. Mount Pleasant Township School District,* 335 Pa. 369, 374–75, 6 A.2d 866, 869–70 (1939).

Likewise the Iowa Supreme Court, interpreting its Soldiers Preference Law, cited a definition from *Webster's New International Dictionary* (2d ed.) that incompetency was "want of physical, intellectual or moral ability." *Collins v. Iowa Liquor Control Comm'n,* 252 Iowa 1359, 1362, 110 N.W.2d 548, 550 (1961).

We can find nothing to suggest that "incompetency," as used in the Veterans Preference Act, has acquired a special meaning; accordingly, "incompetency" is to be construed according to its common and approved usage, which includes want of physical fitness:

Incompetency. Lack of ability, legal qualification, or fitness to discharge the

required duty. A relative term which may be employed as meaning disqualification, inability or incapacity and it can refer to lack of legal qualifications or fitness to discharge the required duty and to show want of physical or intellectual or moral fitness.

*Black's Law Dictionary* 688–89 (5th ed. 1979).

Thus Myers was removed from his job for incompetency and is entitled to a hearing before a veterans preference hearing board.

■ We consider it appropriate to comment on the role of the hearing board when the case involves removal due to physical inability to perform the job. As we said in *Southern Minnesota Municipal Power Agency v. Schrader,* 394 N.W.2d 796, 801–02 (Minn.1986), the task of the hearing board is to determine whether the employer acted reasonably. In making this determination, a hearing board is not to determine what, if any, physical restrictions should be placed on a veteran's activity— that is a medical determination. The proper role of the hearing board is to determine whether, in light of any restrictions placed on the veteran's activity by examining and treating doctors, the employer acted reasonably.

In conclusion, we hold that Myers is entitled to a veterans preference hearing pursuant to section 197.46. The issue to be resolved by the hearing board is whether, given the diagnoses and restrictions placed on Myers' activity by Doctors Biebl and Webb, Oakdale acted reasonably in placing Myers on indefinite medical leave. Pursuant to our decision in *Mitlyng v. Wolff,* 342 N.W.2d 120 (Minn.1984), Myers is entitled to all continuing and accrued salary, less any workers' compensation benefits, from January 1, 1986, the day Myers was removed, until the hearing board has made its ruling.

Affirmed.