In the Matter of Delroy GORECKI, et al., Petitioners, Respondents,

v.

RAMSEY COUNTY, Relator,

Commissioner of Department of Veterans Affairs, Respondent.

No. C1–87–1570.

Court of Appeals of Minnesota.

Jan. 26, 1988.
Review Granted April 4, 1988.

Gregg M. Corwin, St. Louis Park, for petitioners, respondents.

David C. McDonald, Briggs & Morgan, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., Merwin Peterson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and IVERSON and LOMMEN, JJ.*

## OPINION

FORSBERG, Judge.

Respondents Delroy Gorecki, Harry Gregg, and Paul Lindholm are honorably discharged veterans who are employed as attorneys for the Ramsey County Attorney's Office. After the Bureau of Mediation Services determined they were eligible to join the nonsupervisory assistant county attorneys' bargaining unit, the Ramsey County Personnel Department reclassified their positions from Attorney IV to Attorney III. Respondents alleged that this action constituted a removal, and that they were entitled to notice and a hearing pursuant to the Minnesota Veterans Preference Act ("Act"), Minn.Stat. § 197.46 (1986). Following a contested case hearing, the administrative law judge ("ALJ") concluded the reclassification was a removal within the meaning of the Act. The Commissioner of Veterans Affairs adopted the ALJ's findings and conclusions, and ordered that respondents be reinstated with full back pay and benefits. Relator Ramsey County petitioned for a writ of certiorari. We reverse.

## FACTS

At the time of the reclassification, respondents were all classified as Attorney IV and earned approximately $68,500 per year, which is the top of the Attorney IV pay scale. None were performing supervisory duties at that time, although all had done so earlier. Their supervisory duties were removed by the county attorney, either shortly after he was elected, in the case of Lindholm and Gregg, or in 1984, in the case of Gorecki.

There are four classified attorney positions within the county attorney's office:

Assistant County Attorney I, II, III, and IV. The American Federation of State, County, and Municipal Employees Local No. 8 ("AFSCME") represents Assistant County Attorneys I, II, and III; Assistant County Attorneys IV were not included in the union because Attorney IV is a supervisory class. In 1981, respondents, who were all classified as Attorney IV, unsuccessfully sought inclusion in the bargaining unit. They also participated in an unsuccessful attempt to organize a supervisory union.

In October 1985, negotiations for a new collective bargaining agreement for the assistant county attorneys' bargaining unit began. Respondents requested that the union seek their inclusion in the bargaining unit. The personnel department recommended that Attorney IV's be excluded from the upcoming salary adjustment for nonbargaining unit employees, since they were seeking inclusion in the bargaining unit. The personnel board accordingly excluded Attorney IV's from the salary increases granted to nonbargaining unit employees in December 1985. In February 1986, Ramsey County entered into a new collective bargaining agreement with the county attorney bargaining unit. The union and the county were unable to reach an agreement as to the inclusion of Attorney IV's in the unit.

AFSCME, on behalf of respondents, then petitioned the Bureau of Mediation Services, seeking inclusion of respondents in the bargaining unit. Respondents argued that because their positions as Attorney IV's were no longer supervisory, they should be included in the bargaining unit. Ramsey County opposed the inclusion, and argued that the bureau should direct a "classification study" of Attorney IV's. If the employees were found not to be performing job duties and responsibilities consistent with the classification description, they would be assigned a classification consistent with their duties. The bureau subsequently determined that respondents were not supervisors, and found no basis for excluding them from the unit.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The personnel office thereafter conducted a classification study of respondents' positions, based in part on the testimony at the bureau hearing. *The reclassification was not based upon any specific directions from the Ramsey County Board or the county attorney.* On July 11, 1986, the personnel department notified respondents that their positions would be reclassified to Attorney III as of June 27, 1986, the date of the bureau decision. It stated that the salary rates would be frozen at their current levels until the rates were exceeded by the fifteen salary step for the Attorney III position. It also noted that while the positions were reclassified, their schedule and grade would remain allocated to the schedule and grade to which Attorney IV's were allocated. The reclassification had no impact on respondents' current job responsibilities.

Respondents filed a petition with the Commissioner of Veterans Affairs, alleging that the reclassification constituted a removal, requiring a veterans preference hearing pursuant to Minn.Stat. § 197.46. At the contested case hearing, the parties stipulated that the change in respondents' duties from supervisory to nonsupervisory were not part of respondents' claim of removal, demotion, or abolishment of their positions. The ALJ determined that the change in respondents' rank from Attorney IV to Attorney III was a removal within the meaning of the Act and that respondents' rights were violated when they were removed from their positions without hearings as provided in Minn.Stat. § 197.46. The ALJ recommended that respondents be reinstated.

## ISSUE

Did the reclassification of respondents' positions from Attorney IV to Attorney III constitute a removal within the meaning of the Act?

## ANALYSIS

An administrative decision may be revised or remanded if it was affected by error of law, unsupported by substantial evidence in view of the entire record, or arbitrary and capricious. Minn.Stat. § 14.69(d), (e), and (f) (1986). Decisions of administrative agencies are presumed correct and will not be disturbed if there is evidence tending to support the agency's decision. *City of St. Paul v. Harding,* 356 N.W.2d 319, 321 (Minn.Ct.App.1984).

Veterans are accorded special protection in public employment. The Act provides in relevant part:

No person holding a position by appointment or employment in the several counties, cities, towns, school districts and all other political subdivisions in the state, who is a veteran separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Minn.Stat. § 197.46 (1986).

The Act thus allows removal based upon incompetency or misconduct. *See Young v. City of Duluth,* 386 N.W.2d 732, 738 (Minn.1986). A public employer may also abolish an office or a position held by a veteran if it is done in good faith for a legitimate purpose, and not as a mere subterfuge to oust the veteran from the position. *See State ex rel. Boyd v. Matson,* 155 Minn. 137, 141, 193 N.W. 30, 32 (1923). In this case, there is no evidence of incompetency or misconduct, and the parties agree that the Attorney IV classification was not abolished.

The issue presented here is whether respondents were "removed" from their employment when their job positions were reclassified. A discharge or demotion may constitute a removal, while a suspension generally does not. *Myers v. City of Oakdale,* 409 N.W.2d 848, 850 (Minn.1987).

The statute governing classified service in Ramsey County defines reclassification as "changing the allocation of a position to a different class." Minn.Stat. § 383A.281, subd. 24 (1986). An incumbent whose position is reclassified

shall continue in the position if the employee is eligible for the position in the

new class * * *. An incumbent who is ineligible to continue in the reclassified position, shall be transferred, promoted, or demoted. The incumbent's salary shall not be less than it was in the former classified position but it may be frozen at the level of the former classified position until it is commensurate with the class and grade of the position to which the incumbent was transferred or demoted.

Minn.Stat. § 383A.285, subd. 6. An employee who is reclassified may seek review by the personnel director; no further appeal rights are allowed. Minn.Stat. § 383A.285, subd. 4. In contrast, grievances for disciplinary decisions may be heard by an ALJ and decided by the personnel review board. Minn.Stat. § 383A.287, subd. 5(b).

In *Schultz v. Regents of University of California,* 160 Cal.App.3d 768, 771–73, 206 Cal.Rptr. 910, 912 (1984), a personnel department study of 53 jobs recommended that about one-third of those jobs be reclassified. Plaintiff, whose position was reclassified, performed the same job at the same salary after reclassification. The only effect was to freeze his salary until the salaries of others in the same class equaled his; it was undisputed that the reclassification was not disciplinary. In concluding that he was not demoted, the court stated:

> The University's personnel policies expressly define demotions and reclassifications differently. Moreover, the difference between demotions and reclassifications is one of substance. When an employee is demoted, job classifications remain static and the employee travels downward on the fixed matrix of defined jobs. This downward movement creates the ready inference that the employee's performance has been less than satisfactory. And an inference of unsatisfactory performance may be a stigma that may burden the employee's ability to work in the future.
>
> By way of contrast, the process of job reclassification undertaken by the University does not focus on the *performance* of individual employees. Rather, that process compares the prescribed *duties* of different jobs. The University's process of job reclassification does not permit a reasonable inference that an employee has performed his or her job in an unsatisfactory manner.

*Id.* at 773, 206 Cal.Rptr. at 913 (emphasis in original) (footnote omitted). *See Heyne v. Mabrey,* 178 Ind.App. 610, 611–14, 383 N.E. 2d 464, 466–67 (1978) (where change in status is accomplished through general reclassification by personnel board, rather than by appointing authority, it cannot be considered a demotion).

In *Myers,* the Minnesota Supreme Court considered whether a removal occurred when the city placed an employee veteran on an indefinite medical leave. It held:

> We agree with the premise of *Mayor of Newton* [*v. Civil Service Commission,* 333 Mass. 340, 130 N.E.2d 690 (1955)] that *whether an employer has by its action removed a veteran is a matter of substance and not of form.* We hold that under the Veterans Preference Act, *a veteran is removed* from his or her position or employment *when the effect of the employer's action is to make it unlikely or improbable that the veteran will be able to return to the job.*

*Id.,* 409 N.W.2d at 850–51 (emphasis added).

In determining whether the action taken in this case constituted a removal, we must follow *Myers* and examine the substance rather than the form of what occurred. Respondents perform the same duties, have the same responsibilities, and receive the same salary as they did before the reclassification occurred. As already discussed, the civil service laws treat reclassification and disciplinary actions such as demotions and discharges differently. *See* Minn.Stat. §§ 383A.285, subd. 4 and 383A.287, subd. 5(b).

The ALJ, however, determined that a demotion which constituted a removal under the Act occurred because Attorney III has a lower ranking than Attorney IV, and because respondents' salaries were frozen. It also determined that at the time respondents were removed from their supervisory

positions, they in effect experienced a demotion in the *substance* of their positions; the subsequent reclassification was a demotion in the *form* of their positions.

■ We disagree with the ALJ. The facts that respondents' salaries were frozen and that their job titles were changed are insufficient to constitute a demotion. *See Heyne,* 178 Ind.App. at 610, 613–14, 383 N.E.2d at 467. This case presents a far different fact situation from *Myers,* where the employee was placed upon indefinite medical leave.

We also question the ALJ's reliance upon the fact that respondents' supervisory duties were removed earlier. Such reliance violates the parties' stipulation that the change in respondents' job duties from supervisory to nonsupervisory was not part of their claim of removal.

Moreover, we question the appropriateness of applying the protections of the Act to reclassification determinations. If the Act applied to reclassification determinations, a county would have to consider the performance of the employee and prove incompetency or misconduct. *See* Minn. Stat. § 197.46.

In this case, the evidence showed that the personnel department does not look at the performance of the employee when making reclassification decisions. Rather, it looks at the job duties and responsibilities of the positions in determining the proper classification. One witness from the personnel department explained the difficult situation the department would be in if it had to apply the Act to reclassifications:

> Q. Assuming you had a classification in which there are eight positions, and four of those positions are held by Veterans and four are held by non-Veterans, if you were forced to apply the Veteran's Preference Act while you were making a reclassification decision in that kind of situation, what would happen?
>
> MR. CORWIN: I am still going to object. That's improper.
>
> A. I think I would be in a very very difficult situation. There's for one thing I think *I would be forced to do, violate fundamental principle of position classification, which would be to look at how someone is performing the work to get at this issue of either incompetence or misconduct.* That's not an appropriate thing to do. The reason it isn't is *that the fundamental question we are trying to answer when we classify jobs is what is this group of duties, what should it be called, what category or our term classification should it be stuck into,* put into, so right off the bat we would be violating a principle of position classification. Another thing that occurs to me is that we would be attempting to make a classification determination that would fairly apply to every —all of these eight people, as you illustrated, but all of a sudden *we would be stuck with having to treat some of them the Veterans in one way, and the non-Veterans in another way,* so I think it would be a very confusing situation.

(Emphasis added.)

Ramsey County argues and we agree that if it and other units of government are forced to hold a veterans preference hearing and determine incompetency or misconduct when making reclassification decisions, government personnel practices will be thrown into shambles. This is a particularly serious concern in light of upcoming comparable worth decisions. Comparable worth adjustments by local units of government may require a substantial number of reclassification decisions. If a local unit of government is required in each such reclassification decision to grant a hearing and determine misconduct or incompetency, implementation of comparable worth requirements will be seriously delayed.

We therefore hold that the reclassifications in this case did not constitute removals entitling respondents to hearings under the Act.

Finally, in view of our determination that no removals occurred in this case, we deem it unnecessary to address the issue of whether the reclassifications were done in good faith.

**DECISION**

The order of the Commissioner of Veterans Affairs is reversed.