Delroy GORECKI, et al., Petitioners, Respondents–Appellants,

v.

RAMSEY COUNTY, Relator–Respondent,

Commissioner of Veterans Affairs, Respondent.

No. C1–87—1570.

Supreme Court of Minnesota.

March 31, 1989.

Gregg M. Corwin, St. Louis Park, for Delroy Gorecki, et al.

David C. McDonald, Diana J. Vance–Bryan, St. Paul, for Ramsey County.

Hubert H. Humphrey, III, Atty. Gen., Merwin Peterson, Sp. Asst., St. Paul, for Commissioner of Veterans Affairs.

Amicus Curiae:

James B. Lund, Minneapolis, amicus curiae, for Veterans of Foreign Wars.

James Bares, Minneapolis, amicus curiae, for Hennepin County.

Thomas Grundhoefer and Margaret J. Addicks, St. Paul, amicus curiae for League of Mn. Cities & Ass'n of Mn. Counties.

Eric J. Magnuson, Mary C. Cade, Minneapolis, amicus curiae for American Legion.

COYNE, Justice.

Appellants Delroy Gorecki, Harry Gregg and Paul Lindholm, all honorably discharged veterans and Assistant Ramsey County Attorneys, obtained further review of a decision of the court of appeals reversing the Commissioner of Veterans Affairs' determination and concluding that the 1986 reclassification of the three individuals' positions from Attorney IV to Attorney III did not constitute a "removal" within the meaning of the Veterans Preference Act, Minn.Stat. § 197.46 (1986). We affirm.

The classification of Assistant County Attorney IV was defined for individuals who performed, under administrative direction, supervisory functions with regard to one of the major divisions in the county attorney's office. A minimum qualification

for the position was that an individual had served as an Assistant County Attorney III in that same office. All three of these individuals enjoyed positions classified as Attorney IV and a summary of the employment history of each appellant is warranted.

Gorecki joined the Ramsey County Attorney's office in 1970, attaining the Attorney IV classification in 1975 and serving as head of the office's criminal division from 1980–1984. While he had performed certain supervisory tasks prior to 1979, it appears that he was never technically a supervisor as defined within the county's civil service system. After 1984 he has participated in the general trial rotation for the criminal division.

Lindholm was hired in 1961 and reached the Attorney IV classification in 1969 or 1970 in conjunction with the comprehensive classifications of positions in the office in accordance with a civil service system established at that time. He served as head of the criminal division for the period from approximately 1970 through 1980 and thereafter was placed in the Major Offender Unit, where he performed no supervisory duties. Gregg became an assistant county attorney in March 1967 and, upon promotion to head of the welfare division in 1975, attained the Attorney IV classification. He, too, no longer performed supervisory functions after 1979. At least with regard to Lindholm and Gregg, the change in their job responsibilities occurred at the instance of and at the same time as the new county attorney took office.

The record discloses that there existed a county attorney bargaining unit which had been created in 1973 and historically had only included those assistants classified Attorneys I, II and III; Attorney IV positions, supervisory in nature, were viewed as necessarily distinct and were therefore excluded. As early as 1981, appellants sought inclusion in that bargaining unit and, although intervening efforts to create a separate supervisory bargaining unit had been exhaustively pursued without success, they renewed the request in 1985. Ultimately, in March 1986, appellants petitioned the Bureau of Mediation Services for inclusion in that unit, asserting that since they were no longer supervisory personnel and were performing duties otherwise represented, inclusion was appropriate. The BMS issued its decision, determining that appellants should be included within the bargaining unit; in its decision, however, the BMS acknowledged that it was without authority to examine or determine proper classifications within the county's personnel system.

Although there is considerable dispute about who requested the county personnel department to conduct an ensuing classification study, for our purposes it is sufficient to note that a review of Attorney IV positions occurred shortly after the issuance of the BMS decision. Upon completion of the study, appellants were notified of their reclassification from Attorney IV to Attorney III. The parties agree that appellants' job responsibilities were not in any way affected and that their salaries were not reduced as a result of the classification; the salaries were to remain allocated to the schedule and grade of Attorney IV. However, since the pay range for the Attorney III classification, at its highest level, was lower than appellants' current salaries, their salaries were to remain at that same level until exceeded by the Attorney III range. The former classification of Attorney IV was to be eliminated at an unspecified future date.

Appellants then requested a hearing pursuant to the Veterans Preference Act, Minn.Stat. § 197.46 (1986). It is significant that during these proceedings, counsel stipulated that "the change in job duties or responsibilities that occurred in 1979 or 1980 are [sic] not part of [appellants'] claim of removal, demotion or abolishment of their positions." The ALJ determined that the county had removed the appellants within the meaning of the VPA when it reclassified them and therefore recommended their reinstatement to the Attorney IV classification. The Commissioner of Veterans Affairs affirmed the ALJ recommendation in all respects. Ramsey County appealed the commissioner's order and the court of appeals reversed, holding that "the

classifications in this case did not constitute removals entitling respondents to hearings under the Act." *Gorecki v. Ramsey County,* 419 N.W.2d 76 (Minn.App. 1988).

It is important to note at the outset that the Ramsey County personnel system is a comprehensive plan contained in Minn.Stat. ch. 383A. The personnel director is required to maintain, revise and administer a classification and salary plan and to place each position in the classified service in an appropriate class within that plan. Minn. Stat. § 383A.285, subds. 2, 3 (1986). When necessary, the director is to perform a reclassification study and the appointing authority "shall implement the personnel changes required by the classification decision." *Id.,* subd. 5. Incumbents in a reclassified position must remain in the position if "eligible;" if ineligible, the incumbent's salary shall not be reduced but may be frozen until commensurate with the class or grade of the position to which the incumbent is transferred or demoted. *Id.,* subd. 6. An affected employee who disagrees with a reclassification "may protest the action in writing to the personnel director" who in turn must review the decision and may, in a suitable case, change it. No appeals to the personnel review board are authorized. *Id.,* subd. 4. The critical feature of the personnel director's authority is that it entails the maintenance of the comprehensive plan by a scrutiny of positions, not of the individuals who hold those positions.

While this administrative reclassification discretion afforded the personnel director is broad, it is not without limitation when a veteran's employment is involved. For example, if an incumbent veteran is demoted or removed rather than transferred by virtue of a position reclassification, the VPA may be implicated. Minn.Stat. § 197.46 specifically provides that public employers may not "remove" honorably discharged veterans "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." A reclassification decision pursuant to Minn. Stat. § 383A.285, to the extent inconsistent with section 197.46, is subject to the latter

statute's considerations. Minn.Stat. § 197.48 (1986). Our inquiry is therefore directed at whether this reclassification decision constitutes a demotion and therefore a "removal" under the VPA.

■ The appellants raise a threshold question with regard to the standard of review of an agency decision. They contend that, consistent with the preliminary determination of the ALJ, the issue of whether the appellants were demoted or removed from office is one of fact requiring due deference to the agency's decision. We cannot agree. While the hearing officer is clearly required to make findings of fact on which to base a legal conclusion as to whether or not an employee was demoted or removed from an employment position, the ultimate question of whether a removal has occurred is one of law. Accordingly, the decision of the agency is fully reviewable by this court. *Hibbing Education Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985).

Appellants' primary contention is that this reclassification was a mere subterfuge for a demotion. They point to the fact that the change in classification from Attorney IV to Attorney III was accompanied by the salary freeze. They also contend that the present county attorney has a hostile attitude toward them, perhaps in part because they had gained their prominence in the office under the former county attorney. They urge this court to afford them the protections of the VPA in this instance of "effective removal."

We have long been concerned with the protection of veterans employed by state and local governments from unwarranted removal from their positions. We have recognized but three grounds upon which public employers may base a termination or removal of a veteran. Two bases are found in the Veterans Preference Act itself which authorizes a removal only for "incompetency" or "misconduct." Judicial precedent has created the third basis, authorizing the abolishment of a position held by a veteran if the public employer acts in

good faith. *See Young v. City of Duluth,* 386 N.W.2d 732, 738 (Minn.1986); *State ex rel. Boyd v. Matson,* 155 Minn. 137, 141–42, 193 N.W. 30, 32 (1923). Appellants here do not claim that the position or classification of Attorney IV was abolished and instead, the inquiry is only whether a removal has occurred for reasons other than incompetency or misconduct shown after a hearing.

■ In examining the conduct of this public employer, we are guided by two separate principles. The first is that the Veterans Preference Act itself was designed to " 'take away from the appointing officials the arbitrary power, ordinarily possessed, to remove such appointees at pleasure; and to restrict their power of removal to the making of removals for cause.' " *Young v. City of Duluth,* 386 N.W.2d 732, 737 (Minn.1986) (quoting *State ex rel. Boyd v. Matson,* 155 Minn. 137, 141–42, 193 N.W. 30, 32 (1923)). *See also Johnson v. Village of Cohasset,* 263 Minn. 425, 435, 116 N.W.2d 692, 699 (1962) (VPA protects honorably discharged veterans from the ravages of a political spoils system). While the impact of political decisions upon a veteran's employment are minimized, the act cannot be viewed as fully restricting the government's exercise or control over its administrative affairs. *See State ex rel. Boyd v. Matson,* 155 Minn. 137, 193 N.W. 30 (1923). A ministerial or perfunctory act of coordinating an actual position with its appropriate classification will withstand scrutiny if based upon a reasonable exercise of administrative discretion. The second principle is one requiring this court to examine the substance of the administrative decision rather than its mere form. *See Myers v. City of Oakdale,* 409 N.W.2d 848 (Minn.1987).

■ While certainly Attorney III appears to connote a lesser position in a strictly numerical ranking system than Attorney IV, that factor does not by itself require a conclusion that a demotion has occurred. The record discloses that there are no individuals who presently hold a position which has been classified as Attorney IV and that, accordingly, appellants'

relative ranking in the office's system has been unchanged by virtue of this ministerial decision. Moreover, job duties and responsibilities were not in any way affected by the mere act of reclassification; instead, the positions enjoyed by these appellants were simply properly inserted into the comprehensive classification plan adopted by the personnel director. This conclusion is amply supported by the fact that—as the BMS concluded in examining the petition of these individuals to be included in the collective bargaining unit for Attorneys I, II and III—there no longer exists the "supervisory function" distinction which separated Attorney IV positions from that unit.

■ Finally, although salaries were frozen at present level, that is an authorized and appropriate consequence of a transfer of a position to a different classification which reflects actual duties performed. *See, e.g.,* Minn.Stat. § 383A.285, subd. 6 (1986). It was, therefore, not a consequence crafted specifically for these individuals but instead was an implementation of the broad administrative plan. Under these circumstances, we are not persuaded that appellants' claim of entitlement to a continued increase in pay or coordinate cost of living increase is meritorious. They offer no documentary authority to support their conclusion that, but for the reclassification and what they characterize as the resulting "demotion," an increase in salary would have occurred.

In examining the substance of this administrative action, we therefore conclude that the ALJ's findings of fact do not support the conclusion that this reclassification constituted or was the functional equivalent of a "removal" of these veterans from their positions. On the contrary, this reclassification accomplished its designed purpose, namely, to place the appellants' job positions into their appropriate classification.

We do not foreclose, by our decision, the possibility that one might successfully contend that a reclassification was in bad faith so as to constitute a "removal." Here, we have chosen to limit our inquiry because, under the recorded facts and circumstanc-

es, if the appellants suffered a demotion, it occurred when they lost their supervisory duties in 1979 or 1980; their stipulation that those events had nothing to do with their claim that a removal had occurred in 1986 renders a bad faith inquiry irrelevant.

Affirmed.

KEITH, J., took no part in the consideration or decision of this case.