Robert W. MYERS, Petitioner, Respondent,

v.

CITY OF OAKDALE, Appellant.

No. C0–90–1652.

Court of Appeals of Minnesota.

Feb. 5, 1991.

Review Denied April 18, 1991.

Gary W. Bastian, Minneapolis, for respondent.

Frank J. Madden, Pamela R. Galanter, Frank Madden & Associates, Minneapolis, for appellant.

Considered and decided by GARDEBRING, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

The trial court concluded Myers was entitled to payment of back wages and benefits from the time he was discharged until the Veterans Preference Board issued its decision. The trial court also determined the City of Oakdale is permitted to offset wages owed to Myers by the amount of PERA and MII benefits which he received. However, the City was not allowed to offset those wages by the amount of the private no-fault insurance benefits Myers received. The City appealed. We reverse as to Myers' entitlement to back wages and benefits.

## FACTS

Robert W. Myers (Myers) is an honorably discharged veteran. Myers was first employed by the City of Oakdale (City) as a police officer on August 1, 1969. On June 14, 1988, Myers was involved in an off-duty automobile accident in which he suffered serious injuries to his neck and lower back. The accident also aggravated a preexisting condition from an on-duty injury in 1983. Myers worked for a short time after the accident. Then, he took a medical leave as recommended by his doctor. As part of that medical leave, Myers used all of his accrued vacation, holiday pay, sick time and training time. The City, cooperating fully with Myers, even allowed Myers to use advance vacation time through July 31, 1989. This vacation time had not yet been earned.

By July 19, 1988, Myers' accrued benefits were almost exhausted. The police chief notified Myers, in writing, that prior to August 6, 1988, Myers had to either receive permission from the City Council to take a leave of absence without pay or be considered absent without leave (AWOL). The police chief further wrote that if Myers was considered AWOL, he would recommend a one-day suspension for each of the first seven days that Myers was AWOL. The police chief then stated that Myers was AWOL for more than seven days, he would recommend Myers' employment be terminated. Myers was required to act prior to August 6, 1988 because on that date he would have exhausted all of his accrued vacation, sick, holiday, and training time. Furthermore, since Myers was not physically able to return to police duties, and since all sources of pay had by now been exhausted, his status as an employee of the City would end. In response to this written notification, Myers requested and was granted unpaid leave status beginning on August 6, 1988.

During the period between Myers' automobile accident on June 14, 1988, and the commencement of his unpaid leave on August 6, 1988, Myers experienced severe medical problems as a result of the accident. Myers told his police chief he hoped to be classified as permanently medically disabled so he could receive a full disability retirement. The City officials understood this and believed Myers was seeking and would accept medical disability retirement if the medical evidence justified such a retirement.

Later, Myers changed his mind and decided to try to remain on "unpaid leave" indefinitely. Myers wanted to stay on indefinite unpaid leave because he knew that if, by chance, his physical condition would ever improve to the point where he could return to duty, it would be economically advantageous to be on unpaid leave as opposed to permanently separated from employment.

During the time Myers was on unpaid leave status, he received the benefit of a $185 contribution from the City to his medical coverage with Share. Myers' medical coverage was stopped on September 1, 1988, by his request. Myers stated he was receiving other medical coverage through a policy maintained by his wife. Following his accident, Myers applied for and received disability benefits from PERA, MII and Allstate. *Under PERA, Myers applied for and was granted a total and permanent disability.* As a result, Myers received continuing payments of $1,333.86 per month, retroactive to August 7, 1988. At the time of trial, these benefits were still being paid. Myers also applied for and received disability benefits from Minnesota

Indemnity, Inc. (MII), which were available to him through a group policy purchased by him through his employment with the City. Myers received $100 per week for 26 weeks from June 7, 1988 through December 25, 1988. Myers applied for and received disability benefits from his personal no-fault insurance carrier (Allstate). Those benefits were $250 per week from June 29, 1988, to December 16, 1988. Myers has commenced a lawsuit against Allstate for no-fault wage loss benefits from and after December 17, 1988.

On November 8, 1988, the City served Myers with a letter stating its intent to discharge him from his employment. The reason the City gave for the discharge was Myers' incompetency due to medical disability and thus inability to perform his duties as a police officer. The letter also notified Myers of his rights under the Veterans Preference Act and the collective bargaining agreement covering his employment.

Myers requested a Veterans Preference hearing on January 6, 1989. On June 1, 1989, the hearing was held to determine whether the City had grounds to discharge Myers and whether mitigating circumstances existed to reduce the discharge to some other action. The hearing board decided that the City's discharge of Myers was reasonable and that Myers was not entitled to backpay or benefits. This decision was served on Myers on July 10, 1989. Myers appealed the board's decision to the district court. In its decision, issued January 12, 1990, the district court held that the hearing board did not have jurisdiction to decide the issues of backpay and benefits. This court has recently issued a decision agreeing with the district court's determination on that issue. *See Myers v. City of Oakdale,* 461 N.W.2d 242 (Minn.App.1990).

On September 7, 1989, Myers filed a petition for a writ of mandamus. After a hearing, the district court filed an order requiring that the mandamus action be held in abeyance until a decision was rendered on the appeal. In his writ, Myers sought an order requiring the City to pay all salary and fringe benefits, for the period August 6, 1988, through July 10, 1989, to which he would have been entitled had he not been discharged by the City. The parties stipulated that the following are the salary and benefits Myers would have been entitled to had he not been discharged:

1. *Monthly Salary in 1988:* Regular salary of $2,744.82, plus longevity payment of $247.03, for a total gross monthly salary of $2,991.85.

2. *Monthly Salary in 1989:* Regular salary of $2,840.88, plus longevity payment of $247.03, for a total gross monthly salary of $3,087.91.

3. *Health, Life, and Disability Insurance:* The City paid $185 per month in 1988. Myers received this benefit until September 1, 1988, when it was discontinued at his request. Had he remained a paid employee, the City would have paid $195 per month for this benefit in 1989.

4. *Vacation Benefits:* All of Myers' vacation benefits through July 31, 1989 had been exhausted by him prior to August 6, 1988, the date he began his unpaid leave. Additional vacation would have been accrued on August 1, 1989. The parties stipulate that Myers is not claiming any vacation benefits in this action.

The parties also stipulated that the City paid Myers full wages through August 6, 1988, and Myers is not claiming any wages or benefits after August 1, 1989.

A hearing was held on this matter on December 1, 1989. After reviewing the evidence, the trial court concluded the City is permitted to offset the wages owed to Myers by the amount of PERA and MII benefits which he received. However, the trial court concluded the City was not allowed to offset those wages by the amount of the private no-fault insurance benefits that Myers received. The trial court determined the City had not met its burden of proof to show that Myers could have obtained employment of a like kind or grade. After making the appropriate calculations, the trial court concluded the amount owed Myers by the City as and for backpay and benefits, plus interest, less offsets through

July 31, 1989, is $18,214.80. The trial court denied Myers' request for additional damages under Minn.Stat. § 181.13. On July 6, 1990, the trial court issued an order granting Myers' writ of mandamus. The City sought review of the trial court decision. Myers filed a notice of review to have the trial court's decision examined.

## ISSUES

1. Was Myers' petition for a writ of mandamus time barred by the Veterans Preference Act?

2. Was Myers entitled to payment of back wages and benefits during the pendency of the Veterans Preference hearing?

## ANALYSIS

### I.

*Timeliness*

Since the facts are undisputed, the resolution of this case turns on issues of law. In deciding issues of law, this court is not bound by the trial court's conclusions. *A.J. Chromy Constr. Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977). Therefore, this court is free to conduct an independent review of the case. *Service Oil, Inc. v. Triplett,* 419 N.W.2d 502, 503 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988).

The City argues that Minn.Stat. § 197.46 required Myers to petition for writ of mandamus within 60 days of receipt of notice of discharge. The City served Myers notice of discharge on November 8, 1988. The City argues Myers waived his right to seek a writ of mandamus because he did not file his petition before January 7, 1989. The City contends, "[t]his 60 day time period applies both to a request for a hearing and to a writ of mandamus action."

■ Minn.Stat. § 197.46 provides:

Any veteran who has been notified of the intent to discharge the veteran from an appointed position or employment pursuant to this section shall be notified in writing of such intent to discharge and of the veteran's right to request a hearing within 60 days of receipt of the notice of intent to discharge. *The failure of a veteran to request a hearing within the 60–day period shall constitute a waiver of the right to a hearing. Such failure shall also waive all other available legal remedies for reinstatement.*

Minn.Stat. § 197.46 (emphasis added). The plain language of the statute shows that the 60–day time limit does not apply to Myers' ability to seek a writ of mandamus. Furthermore, Myers requested a hearing on January 6, 1989, within the 60–day period, and thereby preserved *all* his rights under Minn.Stat. § 197.46. A writ of mandamus, in accordance with Minn.Stat. ch. 586, is an appropriate manner in which to seek redress if the rights under Minn.Stat. § 197.46 are not properly extended to a veteran.

■ Myers' writ of mandamus action is not time-barred. The 60–day time period set forth in the Veterans Preference Act does not serve, on these facts, as a statute of limitations to completely bar Myers' claim. By not acting within 60 days, the veteran waives (1) his right to a hearing, and (2) his legal remedies for reinstatement. These are the only two waiver situations covered in the act. *See* Minn.Stat. § 197.46. Myers *timely* requested a hearing within the 60–day period.

### II.

*Back pay*

■ We find Myers is not entitled to back wages between the date he received notice of his proposed termination and the date his termination became final because, on the date he received his notice of proposed termination, he was not entitled to any wages or benefits from his employer. They had all been completely exhausted. Thus, when the proposed termination was made final after a full and proper hearing, there were no back wages nor back benefits for which the employer need account.

The general rule is that:

a veteran cannot be removed—i.e. discharged—from his or her public employment except for incompetency or misconduct "after a hearing." * * * *Until dis-*

*charge, the veteran is entitled to be paid.*

Lewis v. Minneapolis Bd. of Educ., Special School Dist. #1, 408 N.W.2d 905, 909 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 23, 1987) (quoting *Mitlying v. Wolff,* 342 N.W.2d 120, 123 (Minn.1984)) (emphasis added).

▮ However, a veteran is not entitled to profit by way of a double recovery. *See, e.g., Lewis,* 408 N.W.2d at 910 (the purpose of the VPA is to provide security in public employment, not to permit a double recovery).

The protections of the Veterans Preference Act provide that "pending discharge the employee is entitled to *retain his position, not improve it."* *Lewis,* 408 N.W.2d at 910 (emphasis added). In the present case, Myers seeks to improve his position through the receipt of back wages even though he was entitled to no wages at the time of discharge.

Myers was on voluntary, unpaid leave status. He was medically unfit to perform the duties of police officer. Myers was paid every bit of salary he had earned. Prior to his voluntary, unpaid leave, Myers was on medical leave, and during that time, he exhausted all accrued vacation, holiday pay, sick time and training time. Myers had been treated fairly and even advanced and allowed to exhaust unearned vacation time prior to his voluntary assumption of unpaid leave. At the time of the initiation of discharge proceedings, Myers was incompetent to perform police duties and he does not argue otherwise. *See Myers v. City of Oakdale,* 409 N.W.2d 848, 851–53 (Minn.1987) (physical inability to perform job requirements is "incompetence" within the Veterans Preference Act). Due to his extended period of incompetence, he had exhausted all entitlements to the receipt of any back wages/benefits. If Myers were to receive back wages from the time of the notice of the hearing until the hearing concluded, on these facts, he would receive wages that he had no possibility of earning on his own, a salary would be created where none existed, and he would be provided a windfall double recovery.

In *Lewis,* the veteran had been on extended voluntary medical leave. When the discharge proceedings were initiated, the veteran was and had been receiving *only* sick leave benefits and no salary. The veteran claimed he was entitled to back wages under the Veterans Preference Act. However, the Minneapolis Civil Service Commission argued the veteran in taking sick leave had removed himself from active performance of his job and was not entitled to receive a salary. This court agreed with the commission and held, "there is no basis to permit [the veteran] to receive both his salary and payment for sick leave." *Lewis,* 408 N.W.2d at 910. There is no equitable reason to distinguish the principle of *Lewis* from the controlling facts of this case.

Myers was not entitled to receive any wages/benefits at the time of initiation of the discharge proceedings. Thus, applying the rationale of *Lewis,* he was not entitled to so-called "back wages" at the time the discharge proceedings were concluded. This result neither diminishes nor improves Myers' position in relation to his employment as a police officer with the City of Oakdale. Myers' position did not deteriorate pending the final discharge hearing.

## DECISION

Myers was not precluded by the 60-day limit of Minn.Stat. § 197.46 from seeking a writ of mandamus. However, Myers was not entitled to receive salary or benefits at the time of the initiation of his discharge proceedings, and therefore, he was not entitled to receive back wages and benefits pending his final discharge.

Reversed.