*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0474p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LARRY M. YOUNG,

    *Plaintiff-Appellant,*

    *v.*

TOWNSHIP OF GREEN OAK,

    *Defendant-Appellee.*

No. 05-2633

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71891—Denise Page Hood, District Judge.

Argued: October 30, 2006

Decided and Filed: December 28, 2006

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Peter J. Osetek, OSETEK & ASSOCIATES, Ann Arbor, Michigan, for Appellant. Gregory A. Roberts, Joseph Nimako, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellee. **ON BRIEF:** Peter J. Osetek, OSETEK & ASSOCIATES, Ann Arbor, Michigan, for Appellant. Gregory A. Roberts, Joseph Nimako, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellee.

---

### OPINION

---

    RONALD LEE GILMAN, Circuit Judge. Larry M. Young appeals from the grant of summary judgment in favor of his former employer, the Township of Green Oak, Michigan. He claims that he was wrongfully discharged from his position as a police officer for the Township. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

# I. BACKGROUND

## A.      Factual background

Larry M. Young, a veteran of the United States Navy, began working as a police officer for the Green Oak Township Police Department in 1978.  In August of 1992, Young suffered a back injury during a training exercise.  The injury was diagnosed as a herniated disc, which prevented Young from working for several days.

When Young returned to work, he performed only light duty assignments until December of 1992.  The Township's Chief of Police, Robert Brookins, then suggested that Young seek workers' compensation benefits.  Young heeded Brookins's advice, stopped working, and submitted an application for workers' compensation benefits, which was approved later that month.  In April of 1993, Young's physician gave Young a letter that released him to return to work with a restriction to light duty.  The Township, however, did not allow him to return to work.

In late September of 1993, Young's workers' compensation benefits ceased for reasons not disclosed in the record.  Young alleges that the Police Department notified him the following month, after he had asked to be paid for work that he had performed testifying in court proceedings, that he was suspended from active duty.  The Police Department required him to turn in his duty-issued equipment and his badge at that time.

Between October of 1993 and January of 1994, Young received no workers' compensation benefits.  In January of 1994, however, the benefits resumed, again for reasons not disclosed in the record.  The Township's insurer challenged the continuation of benefits in 1995, asserting that Young was no longer disabled as a result of a work-related injury.  Young successfully opposed the challenge and continued to receive benefits until 2001.

Although the Police Department would not permit Young to return to work after 1993, he was subpoenaed on several occasions to provide court testimony about matters that he had witnessed before his injury.  The last such subpoena in the record is dated in February of 1994.  Young was maintained as an employee on the Township records, however, until January 8, 2003.

According to Young, he learned in 1992 that a fellow police officer had failed to report discharging his firearm during the pursuit of a suspect.  The Township's police officers are required to report such incidents.  Young informed his supervisors, the Township, and the county prosecutor of the violation by his fellow officer.  As a result, Young contends that the Police Department began retaliating by harassing him at work.  In 1993, a detective sergeant position became available at the Police Department.  Young applied.  After learning that he had not received the position, Young filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  Young alleged that he had been improperly denied a promotion to the detective sergeant position at least in part because he had reported a fellow officer's misconduct.

In May of 2001, Young again sent a letter to Chief Brookins, asking to be returned to work in a restricted capacity.  His letter specified that he had weapon, lifting, weight, and movement restrictions.  He also requested that he be allowed to carry an electric stun gun as part of his accommodations.  Brookins did not reply.  In June of 2001, Young filed a second EEOC claim, alleging disability discrimination under the Americans with Disabilities Act (ADA).  The EEOC issued a right-to-sue letter to Young on February 11, 2002.

Young also learned during the Spring of 2001 that the insurer that had been paying his workers' compensation benefits intended to challenge the continuation of benefits. A magistrate judge with the Michigan Department of Consumer and Industry Services held hearings in August and September of 2001 on whether to continue Young's benefits.  In a written opinion filed in

October of 2001, the magistrate judge determined that Young "no longer suffers a work related disability and that any problems he currently suffers are the result of a degenerative condition not related to the work he was doing at the time of his injury." Accordingly, Young's workers' compensation benefits ceased. The record does not reveal whether Young appealed that determination.

Young filed the present suit in federal district court on May 13, 2002, but he failed to serve a copy of the complaint on the Township. In June of 2002, the Township notified Young by mail that it intended to hold a hearing before the Township Board of Trustees (the Board) pursuant to Michigan's Veterans Preference Act (VPA) in order to determine whether his employment should be terminated. The hearing was scheduled to start 15 days after the date of the letter. As the basis for Young's potential termination, the Township stated that he was "unable to perform the essential functions of a Green Oak Township police officer, with or without accommodation," and "that the conditions upon which he had requested to return to work would pose an undue hardship" on the Police Department.

Prior to the hearing, Young sent Chief Brookins a "renewed request for accommodations" and sought a job as a "follow-up investigator." Brookins again did not reply. Instead, the Board held a hearing over two days in July and August of 2002 to determine whether the Township should terminate Young's employment. After receiving testimony from several witnesses and considering oral and written arguments from the lawyers for both parties, the Board issued a written decision on January 8, 2003, terminating Young as of that date. Young did not inform the Township or the Police Department of the pending federal lawsuit at any time during the hearings.

On January 24, 2003, the Michigan Association of Police, the police union, filed a grievance on Young's behalf that challenged his termination. Chief Brookins denied the grievance on the ground that Young had "waived his right" to invoke the grievance process "by electing to utilize the procedures set forth" in the VPA. As alternate bases for the denial, Brookins noted that the grievance was filed outside of the seven-day period specified in the parties' collective bargaining agreement and was meritless in any event because Young was no longer qualified to be a police officer.

## B.     Procedural background

Young and the Township are not strangers to litigation with each other. In July of 1995, Young filed suit against the Township in the Circuit Court for the County of Livingston, Michigan (the 1995 Action). The complaint alleged violations of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) and the Michigan Handicapper's Civil Rights Act (MHCRA) for failure to promote, retaliation under the ELCRA because Young had filed an EEOC claim, retaliation because he had filed a workers' compensation claim, and age and disability discrimination that resulted in his "constructive discharge in October of 1993."

In July of 1996, the trial court granted partial summary disposition in favor of the Township on all but Young's retaliation claims. A final order was entered in September of 1996, reflecting that the parties had entered into a conditional settlement agreement resolving these remaining issues. But the settlement agreement allowed Young to appeal his MHCRA claim, which Young in fact pursued. The Michigan Court of Appeals, however, affirmed the trial court, concluding that Young had not established a prima facie case of discrimination under the MHCRA. *Young v. Green Oak Twp.*, No. 198019, 1998 WL 1992898, at *3 (Mich. Ct. App. Mar. 13, 1998).

In June of 1998, Young filed a second complaint in the Livingston County Circuit Court, naming the Township and Chief Brookins as defendants (the 1998 Action). He alleged multiple claims, including breach of contract on the basis that he was terminated without just cause for being

disabled, failure to accommodate in violation of the ELCRA and the MHCRA, disability discrimination in violation of the ELCRA and the MHCRA, intentional infliction of emotional distress, continual harassment, hostile work environment, and conspiracy to deprive him of his civil rights. The trial court granted summary disposition for the defendants on all of Young's claims and, in a final order filed in November of 1998, dismissed the case with prejudice. Young timely appealed. The Michigan Court of Appeals dismissed his appeal in an unpublished order in August of 1999 for want of prosecution.

In July of 1999, while his state court appeal in the 1998 Action was still pending, Young filed a lawsuit in federal district court against the Township and the Police Department (the 1999 Action). He alleged violations of his constitutional rights under 42 U.S.C. § 1983, violations of Michigan's Law Enforcement Administration Act, and a hostile work environment. Two months after the lawsuit was filed, Young's attorney withdrew because he was disqualified from the practice of law for reasons not reflected in the record. Young then entered into a settlement agreement with the defendants in January of 2000, and the case was dismissed with prejudice.

The present complaint was filed in May of 2002, but, as previously noted, Young did not promptly serve the Township. In August of 2002, the district court issued an order to show cause why the case should not be dismissed for failure to prosecute. Young's new attorney responded that Young was awaiting the Board's decision on whether to terminate him. The district judge issued a second order to show cause in February of 2003 because the case had still not progressed. In response, Young filed an amended complaint and served the Township. This amended complaint alleged violations of the ADA, Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), employment discrimination, deprivation of procedural due process, retaliatory discharge under 42 U.S.C. § 1983, and a violation of the state's Whistleblowers' Protection Act. The Township filed a motion for summary judgment, arguing that Young's claims were barred by the doctrine of res judicata. In September of 2005, the district court agreed and granted the Township's motion. This timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

We review de novo the district court's decision to grant summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.     The *Yinger* decision

The district court relied on this court's unpublished decision in *Yinger v. City of Dearborn*, No. 96-2394, 1997 WL 735323 (6th Cir. Nov. 18, 1997), in concluding that res judicata barred Young's complaint. In *Yinger*, this court held that res judicata barred a former police officer's successive lawsuit for breach of contract and civil-rights violations. *Id*. at *4-5. At the outset, we must determine whether the district court's reliance on *Yinger* was appropriate.

Brian Yinger was a Dearborn, Michigan police officer who was placed on indefinite medical leave without pay after two psychologists diagnosed him with paranoid personality disorder and deemed him psychologically unfit to serve as a police officer. *Id*. Yinger then filed a complaint in federal court against the City, its pension board, and various City employees, alleging state and

federal constitutional violations as well as wrongful discharge. His complaint was dismissed. A third psychologist later found Yinger fit for service based in part on Yinger's self-report of his distinguished, but entirely fictitious, military service record. The City declined, after investigation, to return him to duty. *Id*.

Yinger then filed a second lawsuit in Michigan state court, alleging breach of contract and various constitutional violations. This complaint was also dismissed, and the Michigan Court of Appeals affirmed because Yinger had failed to exhaust his administrative remedies. While his appeal was pending, Yinger filed an administrative charge against his union, which was denied by an administrative law judge (ALJ). The Michigan Employment Relations Commission affirmed the ALJ's decision. *Id*. Finally, Yinger applied for a duty disability pension. After hearing argument from Yinger, the Pension Board granted him a non-duty disability pension, determining that his paranoid personality disorder was not work related.

Yinger then sued the City in federal court, alleging violations of the ADA and the MHCRA, failure to accommodate, breach of contract, and several constitutional violations. The district court dismissed the ADA, MHCRA, breach-of-contract, and due process claims on the basis of res judicata and the applicable statutes of limitations, and the equal protection claim for failure to state a cause of action. *Id*.

This court affirmed, finding that the heart of Yinger's claims in each lawsuit was his disagreement with the defendants' determination that he was unfit to serve as a police officer because of his psychological condition. *Id*. at *4. Yinger introduced no new evidence to establish that he was fit for duty, and the City and other defendants responded to each lawsuit by stating that they had not changed their position regarding his return to work. *Id*. The *Yinger* court noted that Yinger failed to recognize that "a discrimination claim accrues when the operative decision is made, not when [a plaintiff] experiences the consequences of that decision." *Id*. at *4 (citing *Chardon v. Fernandez*, 454 U.S. 6, 8-9 (1981)). Further, the court concluded that Michigan law regarding res judicata "bars [the parties] from relitigating claims that they could have raised in an earlier action." *Id*. at *5 (citations omitted).

Young contends that *Yinger* can be distinguished on its facts because Yinger suffered from a condition (paranoid personality disorder) that rendered him unfit to serve as a police officer. In contrast, Young argues that he is fit to serve as a police officer with certain reasonable accommodations. But this is a difference in degree only, and one that we find insufficient to distinguish *Yinger*. Young's situation is factually very similar to *Yinger*—both involve plaintiffs who had filed previous lawsuits raising substantially the same claims arising out of the same events against their respective police departments. Even though *Yinger* was an unpublished decision of this court, we conclude that the district court nevertheless appropriately considered *Yinger* for its persuasive value.

Young next suggests that we should follow the Tenth Circuit case of *Morgan v. City of Rawlins*, 792 F.2d 975 (10th Cir. 1986), which decided a res judicata issue arising from an action brought in Wyoming. The Wyoming Supreme Court had circumscribed that state's res judicata doctrine in the case of *Cook v. Elmore*, 192 P. 824 (Wyo. 1920), holding that the doctrine does not bar a second suit "unless the second suit is not only between the same parties, but between them in the same right or capacity." *Id*. at 827. Accordingly, the *Morgan* court applied Wyoming law to determine that res judicata did not bar a second case between the plaintiff and his former employer where the first case alleged procedural issues and the second case alleged substantive issues. *Morgan*, 792 F.2d at 979 (finding that "Wyoming common law recognizes equitable considerations in the application of res judicata and will not preclude litigation for highly technical reasons that would prevent litigants from presenting their claims against others for determination on their merits.") (quotation marks omitted). Michigan, in contrast, has adopted the broad doctrine of res

judicata, barring "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. Michigan*, 680 N.W.2d 386, 397 (Mich. 2004), *rev'd on other grounds*, 712 N.W.2d 702 (Mich. 2006). We thus find *Morgan* distinguishable and of no benefit to Young.

**C.     Res judicata under Michigan law**

The res judicata effect of a state-court judgment in federal court is governed by the Full Faith and Credit Act, 28 U.S.C. § 1738. *See, e.g.*, *Smith, Hinchman & Grylls, Assocs. Inc. v. Tassic*, 990 F.2d 256, 257 (6th Cir. 1993) (concluding that the Full Faith and Credit Act requires a "federal court to look to state court law of res judicata"). Well-settled law directs federal courts to "give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The doctrine of res judicata bars a successive action in Michigan if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair*, 680 N.W.2d at 396. If the three elements are established, then res judicata serves to bar "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 397.

*1.     Prior final decision on the merits*

The district court reviewed the litigation history between the parties and found that the Township had established that "a final decision has been reached on the merits by a court of competent jurisdiction as to the first and second cases filed before the Livingston County Circuit Court." Moreover, the record establishes that the district court properly concluded that the claims raised in the 1995 Action and the 1998 Action, which were decided on the merits, suffice to meet the first element of the res judicata determination. (In contrast, the 1999 Action was dismissed pursuant to a settlement agreement.)

*2.     Same parties*

The parties do not dispute that the lawsuit before us involves the same parties as the previous three lawsuits. This establishes the second element of the res judicata determination.

*3.     Matters that were or could have been resolved in the prior actions*

Young contends that the claims in the instant lawsuit could not have been raised in any of his prior actions against the Township because the claims had not yet accrued. We will consider each of his claims below.

*a.     ADA and PWDCRA claims*

The district court agreed with the Township that the case now on appeal constituted an attempt to challenge the Township's original, unchanged decision not to permit Young to return to work. Young concedes that "he has had prior claims against the Township," but asserts that "the claims in his present case were not ripe for adjudication at the time." Specifically, Young argues that his claims arising from the VPA hearing did not accrue until he was actually terminated in 2003. Young also contends that he could not have brought the present action until he received a right-to-sue letter from the EEOC, which he did not receive until 2002.

The Township, however, argues that Young is simply seeking to launch a fresh attack on the Township's 1993 decision that ended his active duty service. Both the 1995 Action and the 1998

Action raised claims relating to the Township's allegedly discriminatory action and, in both cases, the Township prevailed.

The district judge, applying *Yinger*, found that the "[d]efendant in this case has never changed its position from its decision in 1993 that [Young] was unable to return to work" because his disability rendered him unable to perform the duties of a police officer. "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Yinger*, 1997 WL 735323, at *5 n.3. The Michigan Court of Appeals had found in favor of the defendants on the age and disability-discrimination claims in Young's 1995 Action, and the state trial court granted summary disposition to the defendants on all of Young's claims in the 1998 Action. Because those actions included claims for age and disability discrimination, as well as alleged violations of the MHCRA (the predecessor to the PWDCRA), the district court properly held that res judicata barred Counts I (ADA) and II (PWDCRA) of Young's present lawsuit.

### b.       *Employment discrimination claims under 42 U.S.C. § 1983*

The district court found that Young's § 1983 claims for employment discrimination, retaliatory discharge, and procedural due process violations were barred by res judicata as well. These claims were based on the Board's decision to terminate Young after it conducted a hearing under the VPA in 2002. The district court determined that "[t]he Board's decision was not a fresh act of discrimination because it was the same decision made by Defendant in 1993 not to return Plaintiff to work." With respect to the employment discrimination claim (Count III), Young's 1995 Action alleged "constructive discharge," indicating that Young recognized that he could bring an employment discrimination claim at least as early as 1995.

But Young contends that he could not have raised his § 1983 claims for employment discrimination and retaliatory discharge until after the 2002 VPA hearing. He argues that "[n]either Officer Young nor anyone else could have anticipated that he would be terminated at some unknown future point in time for whatever reasons." At the time of the prior actions in the 1990s, he was still employed by the Township, had not yet made his 2001 and 2002 requests for accommodation, had not had a VPA hearing or been terminated by the Board, and had not received a right-to-sue letter from the EEOC. All of these points, however, are insufficient to overcome the application of res judicata to most of his claims.

Although Young was technically still employed by the Township prior to January of 2003, he had been sufficiently dissatisfied with his situation to complain of employment discrimination, retaliation, and constructive discharge long before. Young had requested accommodation on at least two occasions prior to 2001, once when he sought to return to work on light duty and again when he applied for a position as a follow-up investigator with the Police Department. These requests were denied, and the denials formed the basis for Young's first charge of discrimination with the EEOC in 1993. The record does not include a right-to-sue letter from that time, but Young alleged employment discrimination and retaliation in both the 1995 Action and the 1998 Action.

All of Young's employment discrimination and retaliation claims arise from the Township's refusal to return him to work. We thus conclude that the district court properly found that res judicata barred the relitigation of these claims.

### c.       *Whistleblowers' Protection Act claim*

Young also argues that the district court erred in granting summary judgment in favor of the Township on his Whistleblowers' Protection Act (WPA) claim. He contends that he was terminated in retaliation for bringing an EEOC discrimination charge and for contacting public officials and the media about alleged violations of Police Department reporting rules, both of which are protected activities under the WPA. *See Phinney v. Perlmutter*, 564 N.W.2d 532, 553 (Mich. Ct. App. 1997)

(discussing the required elements of a prima facie case under the WPA). The district court found that Young's WPA claim arose from the same allegedly discriminatory act—the Township's refusal to return him to work—as set forth in both the 1995 and the 1998 Actions.

Under the WPA,

[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee . . . because the employee . . . reports . . . , verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362. Nothing in the WPA prevented Young from bringing a claim under the Act prior to his termination.

As previously discussed, Young raised two claims of retaliation for engaging in protected activity in his 1995 Action: the filing of a Charge of Discrimination with the EEOC and the filing of a workers' compensation claim. This supports the district court's determination that Young was aware that he could bring a retaliation claim as of 1995. In his present complaint, Young alleges that the Township and members of the Police Department began retaliating against him for his whistleblowing activities as early as 1992. But he gives no reason as to why he could not have raised his WPA claim in a prior action. The statutory language clearly allowed him to do so. Res judicata thus operates to bar his WPA claim in the present lawsuit.

### d.        *Veterans Preference Act and 42 U.S.C. § 1983 due process claims*

Young contends that his due process claim under § 1983 did not accrue until after the Board issued its opinion terminating his employment because, prior to that time, he technically remained a Township employee. Both the language of the VPA and a survey of Michigan caselaw support his contention that he could not have raised these claims in any of his earlier actions against the Township. *See* Mich. Comp. Laws § 35.402 (2001) ("No veteran . . . shall be removed . . . except for . . . incompetency; and such veteran shall not be removed . . . except *after* a full hearing before . . . the township board . . . .") (emphasis added); *see also, e.g.*, *DeLeon v. City of Ecorse*, 2006 U.S. Dist. LEXIS 671 (E.D. Mich. Jan. 11, 2006) (denying summary judgment to the city because disputed issues of fact remained about whether the city's failure to hold a VPA hearing *before* terminating a police officer violated his due process rights); *Sherrod v. City of Detroit*, 625 N.W.2d 437, 442 (Mich. Ct. App. 2001) ("The failure of a defendant to comply with the [notice and hearing] procedures contained in the VPA may support a due process claim."); *Jackson v. Detroit Police Chief*, 506 N.W.2d 251, 253 (Mich. Ct. App. 1993) ("The VPA gave plaintiff a right to notice and a hearing before his demotion."). Res judicata, therefore, does not apply. For the reasons discussed below, however, these claims fail on their merits.

## D.    **Young's due process claims**

### 1.        *Young received all of the process that he was due*

Although the district court erred when it found that res judicata precluded Young's procedural due process claim, summary judgment was still appropriate because Young was afforded all of the process that he was due. *See Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995) ("[T]he deprivation of property by state action is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (quotation marks omitted) (emphasis in original). The VPA provides that a veteran is entitled to written notice stating the

cause or causes of removal, transfer, or suspension at least 15 days prior to the hearing. Mich. Comp. Laws § 35.402. A review of the record indicates that the Board did not violate Young's due process rights under the VPA. In accordance with the statute's requirements, the Board provided written notice of the hearing and stated that the Board would

> consider whether or not [Young] should be removed (terminated) as an employee of the Green Oak Township Police Department on the basis that [Young was] unable to perform the essential functions of a Green Oak Township Police Officer, with or without an accommodation, and that the conditions upon which [Young had] requested to return to work . . . would pose an undue hardship on the Green Oak Township Police Department.

This notice came in a letter dated June 4, 2002, and the hearing was scheduled for June 19, 2002. Young made no claim that this sequence violated the 15-day notice requirement of the VPA. He was, moreover, permitted to have an attorney represent him at the hearing, to present evidence, to review hearing transcripts, and to submit a posthearing brief to the Board.

The VPA further requires that "removal, suspension or transfer shall be made only upon written order of . . . the township board." Mich. Comp. Laws § 35.402. Young was terminated in accordance with the statute. In its decision, the Board found that Young had a "continuing physical problem of a degenerative nature," but was no longer disabled as a result of a work-related injury. The Board further concluded that "[i]t is the opinion of the Green Oak Township Board that . . . Mr. Young is physically incompetent to return to full time police duties with the Township." Accordingly, the Board adopted the recommendation of Chief Brookins that Young's employment be terminated.

Young was thus afforded all of the process that he was due under the VPA. So even though the district court erred in finding that Young's procedural due process claim under § 1983 was barred by res judicata, summary judgment for the Township was appropriate on the merits.

### 2.    *The Township did not violate Young's right to substantive due process*

Young also raises a substantive due process argument, although he does not identify it as such. The VPA takes veterans out of an at-will employment regime and provides them with a property interest in their continued employment, which can be altered only by a pretermination hearing and a finding of "just cause" as specified by statute:

> No veteran . . . shall be removed or suspended, or shall, without his consent, be transferred from such office or employment except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency . . . except after a full hearing . . . before the township board.

*Id*. Young alleges that the Township discriminated against him by terminating him for a reason not permitted under the VPA.

The substantive component of the Due Process Clause protects those rights that are "fundamental," meaning those rights that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969). This court has "recognized that the Fourteenth Amendment has a substantive due process component that protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) (quotation marks and citation omitted). "Absent the infringement of some 'fundamental' right," however, this court has held that "the termination of

public employment does not constitute a denial of substantive due process." *Id*. at 1351. As the Eleventh Circuit has stated:

> [A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)); *see also Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1233 (6th Cir. 1997) (relying on *Ewing* in finding that public employees do not have a "fundamental" right to unemployment compensation).

To the extent that a substantive due process claim is available, Young must demonstrate that the Township's decision to terminate his employment had no rational basis. *See, e.g.*, *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) (reviewing a no-trespass policy, which "does not implicate any fundamental right, . . . under the rational basis standard").

The Township Clerk notified Young that the Board would be conducting a hearing to consider his termination "on the basis that [Young was] unable to perform the essential functions of a Green Oak Township Police Officer with or without an accommodation." A challenge to Young's possible "incompetency" under the VPA was thus clearly raised. The Board held a VPA hearing over two days in July and August of 2002. It heard testimony from Chief Brookins and from a sergeant within the Police Department. The Board further considered documentary evidence, including the state administrative decision that Young "no longer suffer[ed] a work related disability and that any problems he currently suffers are the result of a degenerative condition," and reviewed posthearing briefs submitted by both parties.

In its written decision, the Board adopted Chief Brookins's recommendation to terminate Young's employment. It noted that "the issue of competency to the position of police officer was of main concern to the Township Board." Both the testimonial and documentary evidence demonstrated that "physical competency is a mandatory component of functioning as a certified police officer." The Board then found that,

> [b]ased on the statements made by Mr. Young himself in his request to be returned to employment with limited duties and considering the findings of the Workers' Compensation Bureau in recognizing a continuing physical problem of a degenerative nature, there is little doubt that Mr. Young's present physical situation would prevent him from returning to active duty as a Green Oak Township police officer with fully physical capacity. . . . It is the opinion of the Green Oak Township Board that based upon testimony presented, Mr. Young is physically incompetent to return to full time police duties with the Township.

Young argues that "incompetency" under the VPA does not include a physical disability such as his. Although no Michigan court has construed the term "incompetency" under the VPA, the Township points to a Minnesota Supreme Court case that concluded that the term as used in veterans preference statutes encompasses both physical and mental competency. *Myers v. City of Oakdale*, 409 N.W.2d 848 (Minn. 1987). The *Myers* plaintiff was a police officer who suffered a work-related back injury. After the officer was placed on indefinite medical leave, he sought a writ of mandamus to compel his employer to provide him with a hearing under the Minnesota Veterans Preference Act. *Id*. at 849. That Act, which is substantially similar to Michigan's VPA, prohibits the removal of an

employee-veteran "except for incompetency or misconduct shown after a hearing." *Id*. at 850. The *Myers* court surveyed decisions from the courts of other states that had construed the term "incompetency" in similar circumstances. *Id*. at 851-52. From this review, the *Myers* court determined that "'incompetency' is to be construed according to its common and approved usage, which includes want of physical fitness." *Id*. at 852; *see also Tafoya v. New Mexico State Police Bd.*, 472 P.2d 973, 977 (N.M. 1970) (referring to Webster's Third International Dictionary's definition of "incompetence" as including a "lack of physical, intellectual, or moral ability"); *Collins v. Iowa Liquor Control Comm'n*, 110 N.W.2d 548, 550 (Iowa 1961) (same); *Horosko v. Sch. Dist. of Mt. Pleasant Twp.*, 6 A.2d 866, 869-70 (Pa. 1939) (reviewing the definition of "incompetency" in both general purpose and law dictionaries and finding the lack of physical ability to be included in all of them).

We find the reasoning in *Myers* convincing and are persuaded that the Michigan Supreme Court would likewise conclude that the term "incompetency" as used in the VPA encompasses an employee's physical inability to perform the essential functions of his or her job. Young has not identified any caselaw that conflicts with this interpretation. The Township presented evidence at the VPA hearing that Young was not physically capable of performing all of the functions of a Township police officer. Young did not attempt to counter that evidence, nor did he object to the Board's consideration of the Workers' Compensation Bureau decision that he was no longer suffering a work-related disability.

The Township also introduced evidence that its police officers are required to comply with statewide certification requirements. These requirements include certain physical components, such as the ability to forcibly effect an arrest, to climb or jump over obstacles and uneven surfaces, to lift or drag people and objects, and to pursue fleeing suspects on foot in unfamiliar terrain. Sufficient evidence was presented at the VPA hearing about Young's back problems and requests for accommodation to provide a rational connection between the Township's need for police officers who can fulfill all of the functions of their employment and the Board's determination that Young was physically incompetent to do so. *See Thompson*, 250 F.3d at 407.

We thus conclude that Young's substantive due process claim lacks merit. Because the Board did not violate Young's due process rights when it terminated him, Young's § 1983 claims also fail on the merits. *See, e.g.*, *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) (finding that a municipality was not liable for the harm to the victims of an armed hostage-taker where the plaintiff could not show that there had been any constitutional violation). We therefore affirm the district court's grant of summary judgment in favor of the Township on Young's due process claims.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.