NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0153n.06

No. 08-1641

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FREDDIE McCOY, | ) | |
| | ) | |
| **Plaintiff–Appellant**, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| STATE OF MICHIGAN; | ) | UNITED STATES DISTRICT |
| MICHIGAN DEPARTMENT OF | ) | COURT FOR THE EASTERN |
| CORRECTIONS; JEANNE | ) | DISTRICT OF MICHIGAN |
| HIGGINS; KENNETH | ) | |
| ROMANOWSKI, WARDEN; | ) | |
| GERALD CONWAY; EDDIE | ) | **O P I N I O N** |
| CARGOR; KATHY WARNER; | ) | |
| JOHN JUNGLING, all in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| **Defendants–Appellees.** | ) | |
| _____ | ) | |

Before:  MARTIN, SILER and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff–Appellant Freddie McCoy,

proceeding pro se, appeals the district court's grant of the Defendants–Appellees' motion to dismiss

his civil-rights complaint on the grounds of res judicata and sovereign immunity.  Because the

district court erred in finding that res judicata barred several of McCoy's claims, we **REVERSE**, in

part, the judgment of the district court and **REMAND** for further proceedings in accordance with

this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

McCoy began his employment at the Michigan Department of Corrections ("MDOC") as a Corrections Officer in 1989. His tenure, however, was not without conflict. During his employment, McCoy filed numerous complaints of gender discrimination, race discrimination, and retaliation, both internally and with the appropriate external agencies. McCoy also received several disciplinary write-ups, reprimands, and suspensions as a result of his numerous MDOC-policy violations. McCoy was terminated by the MDOC and then reinstated by an arbitrator at least twice. Most relevant to the instant case, however, is a series of events that began on June 14, 2004. As alleged in his complaint, on that day, McCoy was working his assigned shift when he requested permission from Defendant Jeanne Higgins to leave his post for lunch. McCoy asserts that Higgins granted his request but that she later accused him of leaving his post without relief in violation of two MDOC policies and subsequently informed him that he would be subject to disciplinary action.

McCoy continued to work during the MDOC's investigation of his alleged infractions. Following a hearing on September 13, 2004, the MDOC terminated McCoy, citing his June 14 conduct. McCoy asserts however, that contrary to MDOC's claim, his 2004 termination was the product of deliberate and intentional racial discrimination and retaliation for having engaged in protected activity. He filed the instant case in federal district court on February 24, 2006, asserting claims against the State of Michigan, the MDOC, and several MDOC officers in both their individual and official capacities (collectively "Defendants"). Specifically, McCoy alleged race discrimination and retaliatory termination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); disparate treatment based on race and retaliatory discharge in violation of the State of

2

Michigan's Elliott-Larsen Civil Rights Act, Michigan Compiled Laws § 37.2201 et seq., and violations of equal protection, due process, and the First Amendment pursuant to 42 U.S.C. § 1983.

In support of his various claims, McCoy asserts as evidence the fact that no Caucasian employee had been disciplined previously for infractions similar to his purported June 2004 violations and that it was custom within the MDOC to allow employees to take their lunch break without relief. McCoy has also alleged in his complaint that the Defendants "deliberately and intentionally retaliated" against him "for his union activity," Dist. Ct. Docket ("Doc.") 1 (Compl. ¶ 32), harassed him because of his race, *id.* ¶ 33, and provided him with "negative evaluations and memorandums [that] were motivated in whole or in part because of his race and his protected activity," *id.* ¶ 34. In support of these allegations, McCoy cites, among other examples, an incident in August 2004 where Defendant John Jungling informed McCoy that McCoy was no longer permitted to bring various papers to work because McCoy "had made numerous complaints to the administration concerning issues of race and gender discrimination." *Id.* ¶ 31.

Complicating the instant case is the fact that this is not the first time that McCoy has filed suit against the MDOC. Rather, this is the third suit that McCoy has filed in either state or federal court alleging discriminatory treatment in his employment. The first suit stemmed from MDOC's termination (and ultimate reinstatement) of McCoy in 1997 after he had committed a series of rule infractions. Believing that he was disciplined in a discriminatory manner based on his gender, McCoy filed suit in Michigan state court on May 3, 1999 ("state-court litigation").[1] The state court dismissed the suit with prejudice on November 3, 2000, but it provided McCoy with fifteen days to

---

[1]The state-court filings are not contained in the record on appeal. We are therefore forced to rely on the uncontested portions of the parties' description of the state-court claims as well as the descriptions of the state-court litigation that the parties provided in previous federal filings.

file an amended complaint. Doc.12-22 (Mich. Cir. Ct. Order 11/3/00 at 2). Inexplicably, an order permitting McCoy to file that amended complaint was not entered until June 12, 2002.

Meanwhile, on October 4, 2001, McCoy, proceeding pro se, filed a second lawsuit in the U.S. District Court for the Eastern District of Michigan alleging gender and race-based discrimination as well as retaliation. The Defendants filed a motion to dismiss on the grounds of res judicata, citing the state-court litigation. The federal suit was dismissed with prejudice following a hearing pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on April 4, 2002. Doc. 12-23 (Dist. Ct. Order 4/04/02). Undeterred, McCoy filed a motion in state court to reopen the state-court litigation. It is unclear from the record when this motion was filed or on what grounds, and it is equally unclear what claims McCoy asserted. On November 24, 2004, however, after presumably reopening McCoy's case, the state court granted the Defendants' motion for summary disposition, thus finally ending the state-court litigation. Doc. 12-21 (Mich. Cir. Ct. Order 11/24/04). This dismissal occurred approximately one month after McCoy was terminated on the basis of his June 2004 conduct and while he was still appealing his termination through the appropriate grievance process, as required by his collective bargaining agreement.

On February 24, 2006, McCoy filed the instant lawsuit in the U.S. District Court for the Eastern District of Michigan, seeking only monetary relief. The Defendants argued before the district court, as they do now on appeal, that McCoy's claims are barred by res judicata, qualified immunity, and sovereign immunity. In an April 10, 2007 order, the district court granted in part and denied in part the Defendants' motion to dismiss, finding the res judicata doctrine inapplicable but believing that some of McCoy's claims were barred by qualified and sovereign immunity. Doc. 18 (Dist. Ct. Order 4/10/07). On March 31, 2008, upon the Defendants' urging in a motion for

4

reconsideration, the district court ultimately dismissed McCoy's case on the grounds of res judicata. Doc. 36 (Dist. Ct. Order 3/31/08). McCoy timely appealed.

## II. ANALYSIS

**A. Res Judicata Does Not Bar the Instant Action**

The district court dismissed McCoy's complaint on the grounds that the state-court litigation in *McCoy v. Michigan Department of Corrections*, No. 99-90035-NZ (Mich. Cir. Ct. Nov. 24, 2004), barred the instant action. "We review de novo a district court's application of the doctrine of res judicata," *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009), and we conclude that the district court erred in applying the doctrine to this case.

The Full Faith and Credit Clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, require federal courts to give preclusive effect to state-court judgments. Because we "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgement was rendered," we look to Michigan law governing res judicata to determine its applicability. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006).

In Michigan, res judicata bars successive actions "if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Young*, 471 F.3d at 680 (internal quotation marks omitted); *see also Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 759 (Mich. 2007). Michigan courts take a "broad approach to the doctrine of res judicata," and the presence of these three elements "bars not only claims already litigated, but also every claim arising from the same *transaction* that the parties, exercising reasonable diligence, could have raised but did not."

5

*Washington*, 733 N.W.2d at 759 (emphasis added); *see also Young*, 471 F.3d at 680; *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002); *Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992). This approach has been labeled the "transactional test." *Washington*, 733 N.W.2d at 760. The Defendants bear the "burden of proving the applicability of the doctrine of res judicata." *Baraga County v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002).

Turning to the first element, we agree with the Defendants that the state-court dismissal with prejudice amounts to a decision on the merits. *See Brownridge v. Mich. Mut. Ins. Co.*, 321 N.W.2d 798, 799 (Mich. Ct. App. 1982). Furthermore, the second requirement of res judicata is satisfied because there is an identity of parties. First, the MDOC was a named party in the state-court litigation. McCoy added to the instant case Defendants Jeanne Higgins, Kenneth Romanowski, Gerald Conway, Eddie Cargor, Kathy Warner, and John Jungling, all in their individual and official capacities, as well as the State of Michigan. Under Michigan law, however, "a perfect identity of the parties is not required"; rather, the Michigan courts require "a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *Adair v. Michigan*, 680 N.W.2d 386, 396, 397 (Mich. 2004) (internal quotation marks omitted). This test is met when the previous governmental-unit Defendant (here, the MDOC) and the present-case Defendants (here, the individually named Defendants) have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second. *See Motuelle v. Ruffini*, No. 244557, 2004 WL 1254304, at *4 (Mich. Ct. App. June 8, 2004) (unpublished opinion).

The question of privity between the MDOC and the State of Michigan is not always so easily resolved, *see Baraga County*, 645 N.W.2d at 16–17, but in determining that there is identity of

6

parties here, we rely on the fact that the Defendants, including the State of Michigan, are asserting res judicata defensively. In *Monat v. State Farm Insurance Co.*, 677 N.W.2d 843 (Mich. 2004), the Michigan Supreme Court held that mutuality was not required where the party invoked collateral estoppel defensively. *Id.* at 850. The Michigan Court of Appeals extended this proposition to cases involving claim preclusion in *Motuelle*, concluding that "mutuality is similarly not required" in such instances. *Motuelle*, 2004 WL 1254304, at *4 n.3.

Whether the Defendants have met their burden and established the remaining element of the res judicata doctrine—i.e., that the instant claims relating to McCoy's 2004 termination were or could have been resolved in the state-court litigation because they amounted to the same "transaction"—is the issue upon which this case turns. *See Adair*, 680 N.W.2d at 398 ("[T]he determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in [the previous litigation]."). Under Michigan's "transactional test," whether a particular group of facts amounts to a singular "'transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation.'" *Id.* (quoting 46 Am. Jur. (Second) Judgments) (emphasis omitted). Courts employing the transactional test have generally acknowledged that "a new action will be permitted only where it raises *new and independent* claims, not part of the previous transaction based on the new facts." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) (citing *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) (Sotomayor, J.)); *see also* 18 *Moore's Federal Practice* § 131.21[1] (3d ed. 2009) ("Of course, if the new facts establish a new claim separate and distinct from the previous claim, then claim preclusion has no applicability.")

According to the evidence in the record on appeal, the primary issue in the 1999 state-court litigation was McCoy's 1997 termination and the alleged discriminatory incidents both prior to and following that termination. As the Defendants characterized McCoy's claims in their 2002 federal motion to dismiss, in the state-court litigation McCoy alleged "that he was discriminated against because of his gender and because of retaliation" and "that the alleged discriminatory acts occurred from October 8, 1999[,] until October 4, 2001." (Def. Br. in Support of Mot. Dismiss 2/20/02, at 1, 5, filed in *McCoy v. Michigan Dep't of Corr.*, No. 01-73785 (E.D. Mich. Apr. 4. 2002)).[2]

A pragmatic reading of McCoy's 2006 federal complaint and the facts alleged therein, however, makes plain that the instant case centers around McCoy's 2004 termination and constitutes a wholly distinct "transaction" from that involved in the state-court litigation, thus precluding the application of the res judicata doctrine. As an initial matter, the events in the state-court litigation are far removed temporally from the facts and claims asserted in the instant case. The Defendants described the state-court litigation as involving incidents from 1999 until 2001, while the complaint here involves events occurring entirely within 2004. Although the complaint mentions that from "1999 through 2003" McCoy "was personally involved in filing numerous internal complaints alleging racial discrimination," Doc. 1 (Compl. ¶ 13), this statement cannot be read as comprising the asserted cause of action; it is mere background information on the somewhat tumultuous relationship between the parties.

More importantly, however, although the state-court litigation and the instant case both involve claims of discrimination and retaliation, they neither resulted from nor are they tied to the

---

[2]Again, as neither party has provided this court with filings from the state-court litigation, we rely solely on the undisputed characterization of McCoy's state-court action in deciding whether the Defendants have met their burden.

same MDOC actions. The gravamen of McCoy's federal complaint is that his 2004 termination and the activities and complaints surrounding that termination, which took place from June 2004 onward, are, despite everything that may have occurred previously, themselves actionable. In essence, the origin of the two claims is simply not the same. *Cf. Brownridge*, 321 N.W.2d at 799 ("Since both actions arose out of the same discharge from employment, both actions arose out of the same transaction, both actions involved points which properly belonged to the subject of litigation, and both involved the same matter in issue." (alteration and quotation marks omitted)); *Young*, 471 F.3d at 681 (holding that res judicata properly barred claims based on an employer's decision to terminate an employee because the termination "was not a fresh act of discrimination"; rather "it was the same decision" not to allow the employee to return to work that the employee had challenged previously); *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978) ("Both the first and second suits seek to remedy a single alleged wrong[, which was] the discharge of Cemer by Marathon.").

We are also not persuaded by the Defendants' argument that the singularity of the transactions is evident by the fact that the district court had yet to enter judgment in the 1999 state-court litigation at the time of McCoy's 2004 termination. Although Michigan employs a broad view of res judicata, we do not believe that the preclusion of claims that could have been resolved in the previous litigation necessarily includes new and independent claims that arise after the original pleading in the first suit has been filed. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (rejecting the argument that res judicata applies under the theory that the plaintiff "*could* have amended her complaint" on the grounds that "the opportunity to file a supplemental complaint is not an obligation." (internal quotation marks omitted)). Perhaps if an additional manifestation of the initial claim that McCoy had asserted in the state-court litigation subsequently

9

had arisen before the state-court litigation's adjudication on the merits, McCoy may well have been "obliged to amend his . . . initial complaint to add these new allegations." *Dubuc*, 312 F.3d at 750. But, as discussed above, the facts alleged in his instant complaint revolve around McCoy's 2004 termination and are not part of the same transaction upon which the state-court litigation was based. *Cf. id.* at 751 ("When, as here, it is obvious that the alleged ongoing retaliation is actually the defendant continuing on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim."); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) ("[E]ven if a plaintiff is aware of the factual basis for a suit at the filing of another suit, he or she is not obligated to bring all claims together if they do not arise out of the same transaction.").

Moreover, the Defendants have not alleged that a particular Michigan joinder rule required McCoy to add his new and independent claim to his already pending state-court litigation. Michigan Court Rule 2.203(A) provides, in relevant part, that a pleading "must join every claim that the pleader has against that opposing party *at the time of serving the pleading*, if it arises out of the *transaction or occurrence* that is the subject matter of the action." (emphases added). As established above, the state-court litigation and the 2004 federal suit do not stem from the same transaction, and McCoy did not have his 2004-based claim until well after he filed his state-court litigation pleadings.

The fact that McCoy was aware of and mentioned his 2004 termination when he filed his pro se response to the Defendants' motion to dismiss before the state court on November 17, 2004, does not persuade us that the state court actually litigated those issues raised in his most recent federal complaint. First, the record does not contain a copy of the complaint McCoy filed in state court, and there is no evidence that McCoy amended or was required to amend his state complaint to include

10

the claims related to the 2004 termination. Second, the state-court judgment does not state explicitly whether or not it considered the 2004 termination in granting the Defendants' motion for summary judgment. The state court merely dismissed "for the reasons set forth on the record," and, again, the record has not been provided to this court on appeal. Doc. 12–21 (State Ct. Order 11/24/04 at 2). Third, although the district court concluded and the Defendants claim on appeal that McCoy "admitted that the 1999 lawsuit was connected to his 2004 termination," Doc. 36 (Dist. Ct. Order 3/31/08 at 5), the record reveals that the Defendants injected the 2004 termination into the substance of the 1999 state-court suit by including an affidavit related thereto in their motion for summary judgment. McCoy's pro se filing merely responded to the Defendants' offer of proof. It would be inequitable, at best, to hinge the resolution of the res judicata issue on McCoy's purported admission in a pro se filing made in direct response to the Defendants' submission. The Defendants' claim that McCoy raised the issue in a state-court-litigation pleading is misleading.

In sum, we hold that McCoy's suit is not barred by res judicata because the claim upon which the suit is based cannot be said to constitute the same transaction as that involved in the state-court litigation. McCoy's discrimination and retaliation claims related to his 2004 termination were not brought and were not required to have been brought during the pendency of that state-court litigation because the Defendants have not shown that they are related in time, space, origin, or motivation. McCoy's present complaint alleges a new and independent claim based on new facts. The district court erred in concluding otherwise.[3]

---

[3]We note that an order issued by a single judge on November 18, 2008, denied McCoy's motion to proceed in forma pauperis and determined that McCoy's appeal was likely "frivolous" because he "could have sought to amend the 1999 complaint to incorporate the 2004 incidents." *McCoy v. Michigan*, No. 08-1641 (6th Cir. Nov. 18, 2008) (unpublished order). That order, however, fails to consider the impact of the Michigan Supreme Court's decision in *Adair*, which was

11

**B. Qualified-Immunity Defense**

The Defendants assert as an alternative ground for relief that they are entitled to qualified immunity on McCoy's 42 U.S.C. § 1983 claim, yet they provide this court with no substantive analysis of why this might be the case other than the bare assertion that "[t]he record is clear that [McCoy] has failed to allege or prove a violation of federal law." Appellee Br. at 22. In the order presently on appeal, the district court also fails to address the Defendants' qualified-immunity defense. *See* Doc. 36 (Dist. Ct. Order 03/31/08). Because "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below," particularly where the issue has not been briefed adequately, *Katt*, 983 F.2d at 695 (internal quotation marks omitted), we decline to reach the merits of the qualified-immunity defense on appeal.

**C. Sovereign-Immunity Defense**

Finally, the Defendants contend that sovereign immunity prevents McCoy from maintaining his suit against the State of Michigan, the MDOC, and the other named Defendants to the extent that they were sued in their official capacities. Whether immunity exists is a question of constitutional law that we review de novo. *S.J. v. Hamilton County*, 374 F.3d 416, 418 (6th Cir. 2004).

---

issued in 2004. *See Adair*, 680 N.W.2d at 397. Moreover, a single-judge order does not invoke the law-of-the-case doctrine and preclude us from reaching the merits of McCoy's appeal. Federal Rule of Appellate Procedure 27(c) provides, in relevant part, that "[a] circuit judge . . . may not dismiss or otherwise determine an appeal or other proceeding," and "[t]he court may review the action of a single judge." Fed. R. App. P. 27(c). If a merits panel were bound by a single-judge order denying a motion to proceed in forma pauperis on the grounds of frivolousness, then any subsequent appeal automatically would be meritless and the single judge would be vested with a power that Rule 27(c) expressly prohibits. *See Thomson v. Merit Sys. Prot. Bd.*, 772 F.2d 879, 882 (Fed. Cir. 1985); *cf. Friends of Earth v. Reilly*, 966 F.2d 690, 696 n.7 (D.C. Cir. 1992) (expressing doubt that a "single judge acting on a motion for stay can bind a full panel" and invoke the law-of-the-case doctrine); *Locke v. Allstate Ins. Co.*, 696 F.2d 1340, 1343 (11th Cir. 1983) (holding that a single-judge order that was not appealed to a three-judge panel under Federal Rule of Appellate Procedure 27(c) was nonbinding).

We agree with the district court that the State of Michigan is entitled to sovereign immunity with respect to McCoy's 42 U.S.C. § 1983 claim. The Eleventh Amendment generally bars a suit for money damages brought in federal court against a state unless the state has waived its sovereign immunity or consented to be sued, and the State of Michigan has not done so here. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000). Because sovereign immunity extends to "state instrumentalities," *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), and the MDOC is "an arm of the State of Michigan," the MDOC is entitled to sovereign immunity on the § 1983 claim as well, *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000) (unpublished order). Moreover, the named Defendants, in their official capacities, are similarly entitled to immunity with respect to McCoy's § 1983 claim because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). McCoy's § 1983 claim against the Defendants in their individual capacities, however, is not barred by sovereign immunity. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). Lastly, the individual Defendants are not entitled to sovereign immunity with respect to the Title VII claims brought against them in their official capacities, but a suit against them as individuals is precluded under Title VII because they are not alleged to have been McCoy's employers.[4] *See id.*

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of the Defendants' motion to dismiss on the grounds that it is not barred by the doctrine of res judicata; **AFFIRM** the district

---

[4]We do not opine on the applicability of any immunity defense to McCoy's claims under Michigan's Elliott-Larsen Civil Rights Act.

13

court's conclusion that the Defendants, in their official capacities, are entitled to sovereign immunity on the § 1983 claims but not the Title VII claims; and **REMAND** the case to the district court for further proceedings consistent with this opinion.[5]

---

[5]During this appeal, McCoy filed with this court two additional motions:  (1) a motion to compel the production of various documents pertaining to the instant appeal that McCoy needed to prepare his appeal, and (2) a motion to "quash" the district-court order dismissing his complaint. In light of our resolution of the instant appeal, we deny both motions as moot.